David MONTES, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–92–00272–CR.

Court of Appeals of Texas, El Paso.

Jan. 12, 1994.

John Gates, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for the State.

Before OSBORN, C.J., and KOEHLER and BARAJAS, JJ.

## OPINION

KOEHLER, Justice.

This is an appeal from a jury conviction for the offense of murder. The jury assessed punishment at 99 years' imprisonment. We affirm.

In Point of Error No. One, the Appellant contends the court erred in allowing the prosecutor, during the *voir dire* examination of the jury panel, to "contract" with the jurors. During the general *voir dire* of the jury panel, counsel for the State addressed the panel and the following discussion took place:

> STATE: Let me talk about defenses for a while. In cases like this some defenses that may come up would be accident, alibi, self-defense. Let me talk about self-defense for a moment. Self-defense is basically, I hit you, you have the right to hit me back, okay. You have a right to defend yourself against someone's unlawful use of force. Here is another situation. She hits me, I pull out a gun and kill her. Does that sound like self-defense to you all?
>
> DEFENSE: Your Honor, I object, this is contracting.
>
> COURT: Overruled.
>
> STATE: I've gone a bit too far haven't I? Shooting her dead. The law of self-defense, ladies and gentlemen, states a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force. There is a catch to that though.

She hits me, I can't kill her, that's not self-defense. You only use deadly force in defending yourself when deadly force has been used against you. You can't escalate to have self-defense. You can't escalate it yourself. If she pulls out a knife and comes at me, in some situations I can pull out a gun and shoot her. But it is not automatic because to use deadly force the statute goes on, you have to be justified in using force, you have to be a reasonable—a reasonable person in my shoes would not have retreated and it has to be that I have to have deadly force used against me....

While it is proper to use hypothetical fact situations to explain the application of the law, it is not proper to inquire how a venireperson would respond to particular circumstances presented in a hypothetical question. *Cuevas v. State,* 742 S.W.2d 331, 336 n. 6 (Tex.Crim.App.1987), *Cadoree v. State,* 810 S.W.2d 786, 789 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). Although it is proper to question juror's views and sentiments on social and moral subjects generally, the courts do not permit a hypothetical case to be submitted, nor do they allow questions designed to bring out the juror's views on the case to be tried. *Id., Brown v. State,* 674 S.W.2d 443, 446–47 (Tex.App.—Dallas 1984), *aff'd,* 741 S.W.2d 453 (Tex.Crim.App.1987).

In the present case, the evidence at trial revealed that an altercation occurred between the Appellant and his friends and the deceased, Efren Torres. The Appellant's group challenged the deceased to fight and the deceased went outside. As he was taking off his shirt, he was shot by the Appellant.

We find that while the hypothetical used by the prosecutor was generically similar to the case at bar, it was not fact specific. While the present case and the hypothetical share the fact of a killing, the other facts in the hypothetical were posed using different names and it depicted a different factual situation from that at trial. *Henry v. State,* 800 S.W.2d 612, 616 (Tex.App.—Houston [14th Dist.] 1990, no pet.). Even if the hypothetical verges on fact specificity, we note that the Appellant did not object when the

prosecutor gave a similar explanation in his discussion following the objection thereby waiving error. *Id.* Point of Error No. One is overruled.

In Point of Error No. Two, the Appellant asserts that the court erred in refusing to allow Appellant's counsel to impeach two State witnesses with evidence of their deferred adjudication status. Prior to trial, the following discussion occurred:

> DEFENSE: I also, in the prior hearing in this case, the issue came up as to three witnesses as to criminal history, the court's ruling back then was that in two of the witnesses, the Aguilar brothers, Danny and Jaime, that there was deferred adjudication on a felony offense and I had in my motion for discovery asked for that sort of information. What I'm asking now is just on the record, if the State knows that the deferred adjudications are in fact still in place or if they have been revoked? What I'm asking is at some point before they testify that could we get it cleared up that they don't have a prior conviction. My concern is that maybe deferred adjudication has been revoked and there has been conviction entered.
>
> STATE: Your Honor, our first witness will be Jaime Aguilar and the statement [sic] is not aware at this point whether the deferred status has been revoked. I will ask Mr. Aguilar prior to testifying if that is so and if it is I will make that known to the defense attorney.
>
> COURT: Is that acceptable?
>
> DEFENSE: That's okay.
>
> . . . . .
>
> COURT: All right, now was it just one or two on deferred?
>
> STATE: Two, but the first witness is Mr. Aguilar and we will talk to Danny Aguilar prior to his.
>
> . . . . .
>
> COURT: We can go off the record now. (Off the record discussion had.)
>
> COURT: Yes, sir, Mr. Gates.
>
> DEFENSE: In continuation of the last little hearing we had, I have been informed by State's counsel, indeed on both Aguilars, Jaime and Danny, are still on deferred status, however, at this time I would move the court to allow me to use those prior deferred status and that prior criminal history even though it is deferred as impeachment.
>
> COURT: Mr. Medrano.
>
> STATE: Your Honor, the State would again reurge it's objection, that since it is deferred status it is not a final conviction and cannot be used for impeachment purposes.
>
> COURT: All right, your request to use that evidence of deferred adjudication on two witnesses of the State is denied.
>
> DEFENSE: Thank you, Your Honor.

In situations where an accused desires to elicit certain specific responses from a State's witness but is precluded from doing so by the trial court, it is incumbent upon the defendant to either call the witness to the stand and have him testify and answer the specific questions counsel desires to have answered or the defendant may also make an offer of proof of the questions he would have asked and the answers he might have received had he been permitted to question the witness in the presence of the jury. *Koehler v. State,* 679 S.W.2d 6, 9 (Tex.Crim.App. 1984). In the present case, the Appellant made no offer of proof except to state, based upon an off-the-record discussion, that he intended to impeach the two witnesses with regard to their deferred probationary status. The Appellant did not show that the witnesses would or would not have testified as a result of bias, motive, or ill will emanating from their probationary status. Accordingly, he failed to lay the necessary predicate to invoke his right of confrontation. *Callins v. State,* 780 S.W.2d 176, 196 (Tex.Crim.App. 1986). Point of Error No. Two is overruled.

In Points of Error Nos. Three and Four, the Appellant maintains that the court erred in allowing into evidence hearsay statements in violation of the Appellant's Sixth Amendment right to confront the witnesses against him. At trial, the State utilized the testimony of Danny Aguilar. Aguilar stated that on February 16, 1990, he was at Mandy's Bar in

El Paso, Texas. He saw a fight start inside the bar involving an individual named Jose Bernal and the deceased. Jose Bernal, Javier Bernal, Andy DeLeon, and the Appellant were kicked out of the bar. The witness went outside the bar, "Just to tell them to cool it off, just to let it go." The Appellant was standing in the group. The following exchange then occurred at trial:

STATE: What did anybody in that group say regarding what just happened?

DEFENSE: Your Honor, I object to hearsay at this time unless it comes from the defendant himself.

STATE: My response would be, Your Honor, this is res gestae of the event, the witness can testify as to what these people perceived immediately after the event and what was heard.

DEFENSE: I'll disagree, Your Honor, it is naked hearsay.

COURT: Your objection is overruled.

STATE: What was being said immediately after they were kicked out of the bar?

WITNESS: They were going to jump Efren Torres, they were going to beat him. up.

STATE: And the defendant was there when this was being said, is that correct?

WITNESS: Yes.

The witness related that the deceased emerged from the bar and took off his shirt. At that time, the Appellant shot him.

Tex.Penal Code Ann. § 19.06(a) (Vernon Supp.1993) provides:

(a) In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

■ Section 19.06 does not extend the rules of evidence to admit hearsay testimony that otherwise would be inadmissible. *Werner v. State,* 711 S.W.2d 639, 644 (Tex.Crim. App.1986). However, a crime does not occur in a vacuum. Evidence of words spoken during the events surrounding a murder constitute part of the "circumstances surrounding the killing" under Section 19.06. Furthermore, statements offered for the purpose of showing what was said and not for the truth of the matter asserted, do not constitute hearsay. *Nixon v. State,* 587 S.W.2d 709, 711 (Tex.Crim.App.1979). This is particularly so when the making of the statement is relevant to a matter at issue at trial. *Rich v. State,* 510 S.W.2d 596, 598 (Tex.Crim.App. 1974), *Oliva v. State,* 663 S.W.2d 656, 659 (Tex.App.—Corpus Christi 1983, no pet.).

■ In the present case, the Appellant testified that he acted out of fear and in self-defense from the knife-wielding deceased. The statement of intent to beat up the deceased was material to the Appellant's state of mind during the killing but not to the truth of the fact that a beating was to take place. *See Alexander v. State,* 820 S.W.2d 821, 823 (Tex.App.—Waco 1991, pet. ref'd). As such, no error is shown. Points of Error Nos. Three and Four are overruled.

In Point of Error No. Five, the Appellant asserts that the court erred in admitting autopsy pictures of the deceased. State's exhibits numbers 22 and 34 are photographs depicting the body of the deceased. Exhibit number 22 shows the head and upper torso of the deceased and the identification number "ME90–0189" appears in the photo. Dr. Juan Contin, the medical examiner, testified that this was the same individual that he performed the autopsy upon. The Appellant objected to the admission of this exhibit because the Appellant and the State had stipulated to the identity of the deceased and the exhibit was inflammatory and had no probative value in light of the stipulation.[1] Exhibit

---

1. The stipulation, State's exhibit number 35, provided that:

Now comes the Defendant, DAVID MONTES in person and represented by his Attorney, JOHN GATES, and the State of Texas represented by Assistant District Attorneys, GEORGE HAVLOVIC and SAM MEDRANO and agree and stipulate to the following: the

number 34 showed the torso of the deceased. Contin utilized this photo to demonstrate how several bullets and entered from the back and had come to rest in the front of the chest causing bruising. The Appellant objected to the admission of this exhibit stating it bolstered the testimony of the witness and was inflammatory.

In *Long v. State*, 823 S.W.2d 259 (Tex. Crim.App.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 3042, 120 L.Ed.2d 910 (1992), the Court of Criminal Appeals utilized the holdings in *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1991) which dealt specifically with the admissibility of extraneous offenses under Rule 404(b) of the Texas Rules of Criminal Evidence. The Court held that the determinations in *Montgomery* regarding Rules 401, 402 and 403 apply when addressing the admissibility of evidence in general. *Long*, 823 S.W.2d at 271.

■ The Court in *Long* set forth seven factors to utilize in applying the Rule 403 balancing test: (1) the number of photos being offered; (2) their gruesomeness; (3) their detail; (4) their size; (5) whether the photos are black and white or color; (6) whether they are taken close-up; and (7) whether the body is naked or clothed. *Long*, 823 S.W.2d at 272. In determining the admissibility of photographs, a court should consider the circumstances unique to each case and other available means of proof. *Id.* One such circumstance is the situation where a verbal description of injuries is admissible and the photos depict that testimony. Unless the probativeness is substantially outweighed by the prejudicial effect, the photos are admissible. *Long*, 823 S.W.2d at 271.

■ In the present case, exhibit number 22 seems to be necessary, pursuant to the wording of the stipulation, to make the identification of the deceased. Exhibit number 34 was a photograph which matched the verbal description given by the medical examiner concerning the gunshot wounds that entered from the back—a material issue in a self-defense case. Neither exhibit is particularly gruesome given the nature of the case and only two photographs were offered into evidence. We find that the court did not abuse its discretion in admitting the two exhibits into evidence. Point of Error No. Five is overruled.

■ In Point of Error No. Six, the Appellant argues that the court erred in refusing to admit the criminal history of the accused to show that the deceased had a violent and aggressive nature. In a hearing outside the presence of the jury, the Appellant advised the court that he intended to introduce specific instances of prior, violent misconduct on the part of the deceased. The State stipulated that the deceased was found guilty of the offense of aggravated robbery in 1986. However, the Appellant indicated his intention to introduce five El Paso Police Department complaint reports through the custodian of records utilizing TEX.R.CRIM.EVID. 803(6)—the business records exception to the hearsay rule. The State objected on the ground of hearsay and the court sustained the objection. The procedure that the Appellant attempted to use to gain admittance of the police complaint reports was foreclosed in *Cole v. State*, 839 S.W.2d 798, 810 (Tex.Crim.App.1990) (opinion on State's motion for rehearing). Accordingly, the court did not err in excluding the proffered evidence. Point of Error No. Six is overruled.

In Point of Error No. Seven, the Appellant contends that the court erred in allowing the State to present details concerning his prior juvenile conviction. Over objection at the punishment stage of trial, the State was allowed to introduce into evidence a penitentiary packet which contained a petition in a juvenile proceeding from the State of Arizona. This petition contained an allegation apparently tracking the Arizona armed robbery statute.[2] The Appellant contends that

---

identity of the deceased pictured in states exhibit # 22 is that of EFREN TORRES the same individual named in the indictment in the above styled case and cause number 57330.

FURTHER, the Defendant sayeth not.

The stipulation was signed by the Appellant, his counsel and both attorneys for the State.

**2.** The petition read:

Petitioner this 1st day of August, 1988 alleges that said child is delinquent.

COUNT I: DAVID MONTES, on or about the 30th day of July, 1988, while at or near 64 East First Street, in the City of Mesa, Maricopa County, Arizona, in the course of taking prop-

this allowed the State to introduce the details of the offense.

In proving a defendant's prior criminal record during the punishment stage of trial, pleadings—indictment, complaint, and information—are admissible. *Fairris v. State,* 515 S.W.2d 921, 923 (Tex.Crim.App. 1974). However, details of the offense are inadmissible. *Walker v. State,* 610 S.W.2d 481, 483 (Tex.Crim.App.1980). Generally, matters contained in pleadings are not details for purposes of TEX.CODE CRIM.PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1993). *Gamble v. State,* 717 S.W.2d 14, 16 (Tex. Crim.App.1986), *Webb v. State,* 840 S.W.2d 543, 548 (Tex.App.—Dallas 1992, no pet.). In the present case, the petition is certainly a pleading and, as it tracks what is obviously an Arizona penal statute, we find that the court did not err in admitting the exhibit. Point of Error No. Seven is overruled.

The judgment of the trial court is affirmed.

OSBORN, C.J., not participating.

erty of another from Randall Patten's person or immediate presence and against his will, used threats or force against Randall Patten, with the intent to coerce surrender of the property or to prevent resistance to DAVID MONTES'S taking or retaining the property while DAVID MONTES was armed with a deadly weapon or a simulated deadly weapon or used or threatened to use a deadly weapon or dangerous instrument or a simulated deadly weapon, to-wit: a knife, in violation of A.R.S. §§ 13–1904, 13–1901, 13–1902, 13–701, 13–702, 13–801, and 19–604.