923 A.2d 44

David STEWART

v.

STATE of Maryland.

No. 81, Sept. Term, 2006.

Court of Appeals of Maryland.

May 11, 2007.

148

150

Hal C.B. Clagett, III, Upper Marlboro, for appellant.

Jeremy M. McCoy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before BELL, C.J., RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE, WILNER, ALAN M., (Retired, specially assigned), JJ.

RAKER, J.

In this criminal case alleging child abuse and sexual offenses, we must decide whether the trial court erred in declining to ask certain voir dire questions proposed by defense counsel. We shall hold that the trial court did not abuse its discretion in declining to ask the questions submitted by counsel, and we shall affirm.

## I.

Appellant, David Stewart, was indicted by the Grand Jury for Prince George's County in a multi-count indictment alleging child abuse, second degree sexual offense, third degree sexual offense, and fourth degree sexual offense. He proceeded to trial before a jury and was convicted of child abuse and second and third degree sexual offense. The court sentenced him to a term of incarceration of twenty years on the child abuse offense and merged the sexual offenses into the child abuse conviction for sentencing purposes. Appellant noted a timely appeal to the Court of Special Appeals, and this Court, on its own initiative, granted certiorari. *Stewart v. State*, 396 Md. 9, 912 A.2d 646 (2006).

Appellant, a pastor at the Faith in Jesus Christ Ministry in Prince George's County, was charged with sexually abusing "John Doe," a thirteen year old male child and a member of

his ministry. At trial, "John Doe" testified that, on one occasion, he went with two other boys to appellant's house where appellant performed fellatio on him. On another occasion, during spring break of 2003, he went to appellant's house with another boy and appellant again performed fellatio on him. "John Doe" testified also that in October 2004, he left the church service and met appellant on the stairwell, where appellant rubbed "John Doe's" penis over his underwear and attempted to expose it when "John Doe's" mother came into the stairwell. Appellant testified that he never had sexual contact with "John Doe."

The single issue in this appeal involves the failure of the Circuit Court to ask certain questions to the venire panel during voir dire that were requested by defense counsel. Defense counsel submitted two voir dire documents—"Defendant's Requested Voir Dire," containing eighteen questions, and "Amended Defendant's Requested Voir Dire," containing fifty-two questions. It appears from the record that defense counsel withdrew the initial voir dire request and substituted the amended version. It is the failure of the trial court to ask the questions on the amended voir dire request that is the subject of this appeal.

The following proposed questions were within appellant's amended voir dire request:

"1. Does any member of the jury panel personally know or have you had any services performed for you by either of the attorneys in this case?

2. Does any member of the jury panel know the Defendant, or have acquaintance with his family?

3. Has any member of the jury panel or family member or close friend ever been accused of a crime? If so, please approach the bench.

At the bench: What was the nature of the crime? Did the crime involve drugs, or guns, or violence? When did it occur? Was (were) the perpetrator(s) apprehended? Do you believe you or your friend or family member were fairly treated by the criminal justice system?

4. Has any member of the jury panel or any member of your family now or previously been a member of any police department o r law enforcement agency?

5. Has any member of the jury panel previously appeared as a witness in any criminal case? If so, please approach the bench.

> At the bench: What was the nature of the crime? Did the crime involve drugs, or guns, or violence? When did it occur? Was (were) the perpetrator(s) apprehended? Do you believe you or your friend or family member were fairly treated by the criminal justice system?

6. Does anyone have any personal knowledge about the facts of this case, or have you read anything about the case?

7. Does any member of the jury panel know any of the individuals who may be called as witnesses in this case? If so, please approach the bench.

> At the bench: Do you know the witness socially, or from work, or otherwise? How long have you known the witness? Would you tend to give either more or less weight to the testimony of this witness, because you know the witness?

8. Does any member of the jury panel draw any inferences of guilt from the mere fact that a person has been indicted for a crime?

9. Does any member of the jury panel have any quarrel with the principle of American Justice that declares all persons to be presumed innocent until proven guilty beyond a reasonable doubt?

10. Would any member of the jury panel be inclined to give more weight and consideration to the arguments of the assistant state's attorney than to those of defense counsel, merely because he or she is employed as an assistant state's attorney?

11. Would any member of the jury panel be inclined to give more weight to the testimony of a police officer merely because he is a police officer?

12. Has any member of the jury panel ever previously served as a juror in a criminal case? If so, please approach the bench.

At the bench: What crimes were involved in the trial? What verdicts were rendered?

13. Does any member of the jury panel have any matters occurring at work or at home that would prevent you from giving this case your full, undivided attention during the trial and deliberations involved?

14. Does any member of the jury panel know of any reasons why they cannot serve on this jury and render a fair and impartial verdict based upon the evidence as you shall hear it? If so, please approach the bench.

15. Is there anything about the facts of this case that would make it difficult for any member of this jury panel to render a fair and impartial decision? If so, please approach the bench.

16. Does any prospective juror belong to any organization that seeks to influence the courts, or public policy? If so, please approach the bench.

At the bench: To what organizations do you belong, that seek to influence the courts or public policy?

17. Has any prospective juror or any member of your immediate family ever been employed by or associated with any municipal, state, or federal police force, law enforcement agency, prosecutor's office, public defender's office, or other law office of any type?

18. Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts at a trial where narcotics violations have been alleged? [1]

---

1. The court declined to ask this question, and when the court pointed out that narcotics were not involved in appellant's case, defense counsel withdrew the question.

19. Have you had any job that involved working with infants or young children?

20. Does anyone or a close family member baby-sit for children?

21. Does anyone or a close family member baby-sit for children?

22. Who has a child, or is close to a child who is about the age of the complainant in this case?

23. Has your contact with children ever involved discussing sexual matters or allegations of sexual abuse?

24. Has child development been an area of interest to you?

25. Have you taken courses in child development?

26. Have you read any books, watched, or attended programs on the subject? Describe them, please.

27. Does anyone feel that the presumption of innocence or burden of proof should be higher or lower because this is a case involving child sexual abuse (or rape)?

28. Does anyone have experience through courses or work with sexual abnormalities?

29. Will anyone here have any difficulty in sitting and listening to testimony from a young child or young woman concerning matters of a graphic sexual nature?

30. What do you think should happen to people accused of molesting children?

31. Will anyone here have difficulty sitting and listening to testimony of a graphic and sexual nature and discussing it with eleven strangers?

32. Does anyone here have any difficulty with my asking questions concerning graphic sexual acts to the complaining witness or other witnesses?

33. What is it about the topic of this sexual assault case that you feel might make it difficult for you to listen to the testimony?

34. Do you feel that difficulty might make it a problem for you to discuss some of the issues in this case?

35. Do you feel because of that difficulty this might not be the case for you?

36. Has anyone here been the victim of sexual abuse or have a close friend or family member who has?

37. Do you know anyone accused of sexual abuse allegations either officially or informally?

38. Do you know anyone who has ever made a false allegation of sexual or physical abuse?

39. Has anyone here ever reported a case of possible sexual abuse?

40. How many of you believe children always tell the truth?

41. Has anyone here ever had occasion to evaluate the truthfulness of someone's story?

42. Do you believe children are more or less honest than adults?

43. Would you automatically believe an adult over a child or a child over an adult who testifies?

44. Do you have any difficulty being asked to judge the credibility and honesty of a witness? How about a witness who may b e very emotional in providing that testimony?

45. Do you feel just because a child or adult testifies about sexual assault that it must necessarily be true or untrue?

46. Do you believe that a witness is more or less honest because that witness may be emotional when providing his or her testimony?

47. Does anyone have feelings about how a child should be interviewed or questioned about sexual abuse?

48. Has anyone here ever had experience with children who have been influenced by adults?

49. Is there anyone here who believes that a child could not be influenced by an adult to say or act in a particular w ay?

50. What role, if any, do you think adults play in children's reporting of events?

51. Does anyone harbor strong feelings regarding violations of the narcotics laws? Would it be difficult for you to fairly and impartially weigh the facts at a trial in which the defendant was charged with possession and distribution of a controlled dangerous substance.[2]

52. Does any member of the jury panel spend more than two hours per week in church?

At the bench: Would you be inclined to give more weight to the testimony of a religious person merely because he or she is religious?"

During the voir dire proceeding, the court described the nature of the offense to the venire panel and asked whether the jurors had any knowledge of the alleged facts of the case, whether they knew any of the potential witnesses, lawyers in the case, or the defendant, whether any of the panel members had ever served on a jury before, whether any member belonged to, supported, or contributed to any organization that seeks to influence the criminal laws, and whether they would be inclined to give greater weight to the testimony of a police officer than other witnesses. The court asked the venire panel whether any member of the panel or member of their immediate family had ever been the victim of, a witness to, or accused of a crime. The court asked appellant's amended proposed voir dire questions no. 1, 2, 3, 4, 6, 7, 11, 12, 13, 14, 15, 16, and 17. In addition, the court asked the venire panel whether any member of the panel "hold[s] any religious, philosophical or personal beliefs that would prevent you from reaching a fair and impartial verdict based solely on the evidence presented in the court?" The court concluded by asking whether any panel member has "any reason that I have not gone into why you believe you could not sit as a juror in this case and return a fair and impartial verdict based solely on the evidence presented here in court?"

Defense counsel excepted to the court's failure to ask ques-

---

2. Defense counsel withdrew this question.

tions no. 8, 9, 10, 13, 14, 15, and 17–52.[3]

## II.

Appellant contends that the trial court's refusal to ask his proposed voir dire questions violated his right to a fair and impartial jury.[4] He argues that "voir dire questions 15, 19–50, requested by appellant deal with specific questions concerning attitude which might make a potential juror incapable of deciding the matter fairly on the evidence." He argues "that question 27 is almost exactly like the question refused in *Sweet [v. State,* 371 Md. 1, 806 A.2d 265 (2002) ]."

Voir dire is critical to assure that the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights guarantees to a fair and impartial jury will be honored. *State v. Logan,* 394 Md. 378, 395, 906 A.2d 374, 384 (2006); *Curtin v. State,* 393 Md. 593, 600, 903 A.2d 922, 926 (2006); *White v. State,* 374 Md. 232, 240, 821 A.2d 459, 463 (2003); *Dingle v. State,* 361 Md. 1, 9, 759 A.2d 819, 823 (2000). "Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales–Lopez v. United States,* 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981).

In Maryland, the sole purpose of voir dire is to ensure a fair and impartial jury by determining the existence of cause for disqualification, and not as in many other states, to include the intelligent exercise of peremptory challenges. *Logan,* 394 Md. at 396, 906 A.2d at 384; *State v. Thomas,* 369

---

3. In response to the trial court's observation that there were no narcotics laws involved in the offense, defense counsel asked the court "to strike" questions no. 18 and 51.

4. Although appellant cites no authority for his argument, we shall assume that he relies upon Maryland common law, as the federal Constitution does not require specific voir dire questions concerning sexual abuse or child abuse.

Md. 202, 207, 798 A.2d 566, 569 (2002); *Evans v. State*, 333 Md. 660, 676, 637 A.2d 117, 125 (1994). As we noted in *Dingle v. State*, 361 Md. 1, 759 A.2d 819:

"Maryland has adopted, and continues to adhere to, limited voir dire. It is also well settled that the trial court has broad discretion in the conduct of voir dire, most especially with regard to the scope and the form of the questions propounded, and that it need not make any particular inquiry of the prospective jurors unless that inquiry is directed toward revealing cause for disqualification."

*Id.* at 13–14, 759 A.2d at 826 (internal citations omitted).

 We have identified two broad areas of inquiry that may reveal cause for a juror's disqualification: (1) examination to determine whether the prospective juror meets the minimum statutory qualifications for jury service, and (2) examination to discover the juror's state of mind as to the matter in hand or any collateral matter reasonably liable to have undue influence over him. *Davis v. State*, 333 Md. 27, 35–36, 633 A.2d 867, 871 (1993). The scope of voir dire and the form of questions propounded rest firmly within the discretion of the trial judge. *Curtin*, 393 Md. at 603, 903 A.2d at 928; *Boyd v. State*, 341 Md. 431, 436, 671 A.2d 33, 35 (1996). It is the responsibility of the trial judge to conduct an adequate voir dire to eliminate from the venire panel prospective jurors who will be unable to perform their duty fairly and impartially and to uncover bias and prejudice. *Logan*, 394 Md. at 396, 906 A.2d at 385; *White*, 374 Md. at 240, 821 A.2d at 463. To that end, the trial judge should focus questions upon "issues particular to the defendant's case so that biases directly related to the crime, the witnesses, or the defendant may be uncovered." *Thomas*, 369 Md. at 207–08, 798 A.2d at 569. In reviewing the court's exercise of discretion during the voir dire, the standard is whether the questions posed and the procedures employed have created a reasonable assurance that prejudice would be discovered if present. *White*, 374 Md. at 242, 821 A.2d at 464. On review of the voir dire, an appellate court looks at the record as a whole to determine whether the matter has been

fairly covered. *Logan,* 394 Md. at 396, 906 A.2d at 385; *White,* 374 Md. at 243, 821 A.2d at 465.

We review the trial judge's rulings on the record of the voir dire process as a whole for an abuse of discretion, that is, questioning that is not reasonably sufficient to test the jury for bias, partiality, or prejudice. *White,* 374 Md. at 243, 821 A.2d at 465. It appears to be the universal rule that on appellate review, the exercise of discretion by trial judges with respect to the particular questions to ask and areas to cover in voir dire is entitled to considerable deference. The trial judge has had the opportunity to hear and observe the prospective jurors, to assess their demeanor, and to make factual findings. The judge's conclusions are therefore entitled to substantial deference, unless they are the product of a voir dire that "is cursory, rushed, and unduly limited." *Id.* at 241, 821 A.2d at 464. *See also Mu'Min v. Virginia,* 500 U.S. 415, 428, 111 S.Ct. 1899, 1907, 114 L.Ed.2d 493 (1991) (noting that the findings of the trial judge on the issue of juror impartiality should be upheld absent manifest error); *Rosales–Lopez,* 451 U.S. at 189, 101 S.Ct. at 1634 (noting that "[b]ecause the obligation to impanel an impartial jury lies in the first instance with the trial judge, and because he must rely largely on his immediate perceptions, federal judges have been accorded ample discretion in determining how best to conduct the *voir dire* ").

The manner of conducting voir dire and the scope of inquiry in determining the eligibility of jurors is left to the sound discretion of the judge. *Curtin,* 393 Md. at 603, 903 A.2d at 928; *Whittemore v. State,* 151 Md. 309, 315, 134 A. 322, 324 (1926); *cf.* Maryland Rule 4–312(d) (providing that the "court may permit the parties to conduct an examination of prospective jurors or may itself conduct the examination"). Other than by Rule 4–312 and Maryland common law, the manner of conducting voir dire is not governed by any statute or specific rule. *Poole v. State,* 295 Md. 167, 187, 453 A.2d 1218, 1229 (1983). As to the scope of inquiry and the decision as to whether to permit a particular question, the trial judge is

not required, with some limited exceptions,[5] to ask specific

---

5. We pointed out in *Curtin v. State*, 393 Md. 593, 903 A.2d 922 (2006), several areas of inquiry where, if reasonably related to the case before the court, a trial judge must question prospective jurors. We stated as follows:

 "These areas are: race, ethnicity, or cultural heritage, *Hernandez v. State*, 357 Md. 204, 232, 742 A.2d 952, 967 (1999) ('Where a *voir dire* question has been properly requested and directed to bias against the accused's race, ethnicity, or cultural heritage, the trial court ordinarily will be required to propound such a question.'), religious bias, *Casey [v. Roman Catholic Arch.*, 217 Md. 595, 607, 143 A.2d 627, 632 (1958) ] ('[I]f the religious affiliation of a juror might reasonably prevent him from arriving at a fair and impartial verdict in a particular case because of the nature of the case, the parties are entitled to ... have the court discover them.'); in capital cases, the ability of a juror to convict based upon circumstantial evidence, *Corens [v. State*, 185 Md. 561, 564, 45 A.2d 340, 344 (1946) ] ('We ... hold that the State has the right to challenge a juror in a capital case on the ground that he would not be willing to convict on circumstantial evidence.'), and placement of undue weight on police officer credibility, *Langley v. State*, 281 Md. 337, 349, 378 A.2d 1338, 1344 (1977) ('[W]e hold that in a case such as this, where a principal part of the State's evidence is testimony of a police officer diametrically opposed to that of a defendant, it is prejudicial error to fail to propound a question such as ... whether any juror would tend to give either more or less credence ... [to a police officer].'); violations of narcotics law, [*State v. Thomas*, 369 Md. 202, 214, 798 A.2d 566, 573 (2002) ], (holding that trial judge abused his discretion in failing to ask question whether any jurors harbored strong feelings towards the violation of narcotics laws where defendant was charged with the possession and distribution of a controlled dangerous substance); strong emotional feelings with regards to alleged sexual assault against a minor, *Sweet [v. State*, 371 Md. 1, 10, 806 A.2d 265, 271 (2002) ] (holding that trial court abused its discretion in refusing to ask whether the charges of second degree assault and third degree sexual offense against a minor stirred up such strong emotional feelings that it would affect the veniremen's impartiality); *cf. Landon v. Zorn*, 389 Md. 206, 222, 884 A.2d 142, 151 (2005) (holding that trial judge did not abuse his discretion in refusing to ask proposed voir dire question regarding bias against plaintiffs in personal injury and medical malpractice cases because an affirmative answer to the proposed question would not constitute grounds for disqualification for cause)."

 *Curtin*, 393 Md. at 609–10 n. 8, 903 A.2d at 932 n. 8.

 Voir dire to discover racial bias is another area requiring specific voir dire. The Supreme Court, in *Turner v. Murray*, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986), held that a "capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias." *Id.* at 36–37, 106 S.Ct. at 1688. The Court noted, however, that "[t]he rule

questions requested by trial counsel. Questions which are not directed at a specific ground for disqualification, which are merely "fishing" for information to assist in the exercise of peremptory challenges, which probe the prospective juror's knowledge of the law, ask a juror to make a specific commitment, or address sentencing considerations are not proper in voir dire. *See Curtin*, 393 Md. at 602, 903 A.2d at 928; *Grogg v. State*, 231 Md. 530, 532, 191 A.2d 435, 436 (1963). *See also Standefer v. State*, 59 S.W.3d 177, 180 (Tex.Crim.App.2001) (defining a "commitment" question as one where "one or more of the possible answers is that the prospective juror would resolve or refrain from resolving an issue in the case on the basis of one or more facts contained in the question").

The trial judge was not required to ask voir dire questions in any particular form, to ask any particular number of questions on a particular subject, or inquire into a particular area merely because the court was requested to do so by the defendant. With the exception of the few mandatory questions identified by this Court and the United States Supreme Court, *see supra* note 5, the failure to ask specific questions will be reversed only for abuse of discretion.

Several cases have identified questions or matters that are inappropriate for voir dire or are beyond the jury's scope of responsibility. Sentencing, for example, with the exception of capital cases, is not the concern of the jury. Questions not directed to a specific ground for disqualification but which are speculative, inquisitorial, catechizing or "fishing," or those asked in aid of exercising peremptory challenges, may be refused in the discretion of the court, even though it would not be error to ask them. *See McGee v. State*, 219 Md. 53, 58–59, 146 A.2d 194, 196 (1959). As we noted in *Logan*, questions asking whether prospective jurors would

we propose is minimally intrusive; as in other cases involving 'special circumstances,' the trial judge retains discretion as to the form and number of questions on the subject, including the decision whether to question the venire individually or collectively." *Id.* at 37, 106 S.Ct. at 1688–89.

follow the court's instructions on the law are disfavored in Maryland and a court does not abuse its discretion in refusing to ask them. *Logan,* 394 Md. at 399, 906 A.2d at 386. A question designed to commit potential jurors to positions on a specific set of facts which will arise in the course of a trial is also improper. *See Moncada v. State,* 960 S.W.2d 734, 736 (Tex.App.1997). Questions designed to bring out the jurors' views on the case to be heard are improper as well. *See Montes v. State,* 870 S.W.2d 643, 645 (Tex.App.1994). Questions should not be argumentative, cumulative, or tangential. *See State v. Johnson,* 119 R.I. 749, 383 A.2d 1012, 1018 (1978).

The United States Supreme Court reviewed the subject of voir dire in *Mu'Min v. Virginia,* 500 U.S. 415, 111 S.Ct. 1899, 114 L.Ed.2d 493. In *Mu'Min,* the issue was the adequacy of the trial court inquiry on voir dire as to whether the prospective jurors had been tainted by pretrial publicity. The trial judge asked the venirepersons whether they had acquired any information about the crime or the accused from news media or from any other source. As a follow-up question to those persons who had responded affirmatively, the trial court asked whether any of the information acquired would affect the juror's impartiality and whether they could keep an open mind until they heard the entire case before reaching a conclusion as to the accused's guilt or innocence. *Id.* at 419–20, 111 S.Ct. at 1902. The trial court declined to ask those jurors who had responded about the source or content of their prior knowledge. *Id.* at 420, 111 S.Ct. at 1902. The Supreme Court held that "content" questions, although perhaps helpful in selecting an untainted jury, are not mandatory. *Id.* at 424–25, 111 S.Ct. at 1904–05. The Court concluded that such questions are constitutionally compelled only if the trial court's failure to ask them renders the defendant's trial fundamentally unfair. *Id.* at 425–26, 111 S.Ct. at 1905.

We turn to appellant's exceptions. Just as the trial court was not required to ask the *Mu'Min* pretrial publicity "content" questions, the trial court was not required to ask speculative, inquisitorial, catechizing, "fishing," "open-ended," sentencing related, or law based questions. Counsel cites no case

to us, and we have found none, that has held that questions such as those requested must be asked to eliminate the possibility of bias in a child sex abuse case.

None of appellant's questions that the judge refused to ask fell within the mandatory areas of inquiry. None of the questions were reasonably likely to reveal cause for disqualification and none of them dealt specifically with the facts of the case, the crime, the witnesses, or appellant himself. The court asked questions no. 13, 14, 15, and 17 either exactly as requested or in some form covering the subject. In addition, the court asked the jury panel the following questions:

> "Do any of you, ladies and gentlemen, hold any religious, philosophical or personal beliefs that would prevent you from reaching a fair and impartial verdict based solely on the evidence presented in the court?
>
> \* \* \*
>
> Finally, do any of you have any reason that I have not gone into why you believe you could not sit as a juror in this case and return a fair and impartial verdict based solely on the evidence presented here in court?"

Merely asking the general question, "is there any reason why you could not render a fair and impartial verdict," is not an adequate substitute for properly framed questions designed to highlight specific areas where potential jurors may have biases that could hinder their ability to fairly and impartially decide the case. *See Hernandez v. State,* 357 Md. 204, 226, 742 A.2d 952, 963–64 (1999); *Davis,* 333 Md. at 47, 633 A.2d at 877. Nonetheless, the court in this case did not merely ask the general question and did ask the properly framed questions so as to identify potential jurors with biases that are cause for disqualification. The court properly refused to ask those questions designed to identify jurors with attitudes or associations that might aid in the exercise of peremptory challenges. Questions asking whether a prospective juror or close family member has ever baby-sat for children, and the like, are not a basis for disqualification for cause.

We address the remaining questions to which appellant excepted in turn. Questions no. 8 and 9 addressed matters of law, and as such, were not the proper subject of voir dire. Question no. 30 addressed sentencing considerations, and therefore was inappropriate. Appellant's no. 36 was covered by the court's inquiry as to whether any prospective juror had ever been the victim of, a witness to, or accused of a crime, and appellant's question no. 52 was covered by the court's inquiry as to whether any prospective juror had "religious, philosophical or personal beliefs" that would prevent the juror from reaching a fair and impartial verdict.

Questions no. 19, 20, 21, 22, 23, 24, 25, 26, 29, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43, 45, 47, 48, 49, and 50 are not questions where the response would support disqualification for cause. Questions no. 19, 20, 21, 22, 23, 24, 25, 26, 28, 37, 38, 39, 40, 41, 42, 47, and 48 are too broad and general to support a challenge for cause. For example, whether a person had a job that involved working with infants or young children would not disqualify him or her as a juror. The same is to be said for whether the juror has a close family member who baby-sits for children, has a child or is close to a child the age of the complainant in the case, and so on.

Questions no. 44 and 46 were not mandatory questions. Whether a witness will be emotional during testimony is speculative and whether the prospective juror would find it difficult to judge credibility for honesty is not the basis of a challenge for cause. While it would not have been error to ask the questions, it is surely not error to refuse.

Question no. 10 inquires as to whether a prospective juror would give greater weight and consideration to the arguments of the assistant state's attorney than to those of defense counsel. While seemingly similar to the mandatory question regarding whether a potential juror would give greater weight to the testimony of a witness due to his or her official status, *see Langley v. State*, 281 Md. 337, 348–49, 378 A.2d 1338, 1343–44 (1977), it differs in that question no. 10 does not involve the juror's role as factfinder. In *Langley*, we

stated that "where a principal part of the State's evidence is testimony of a police officer diametrically opposed to that of a defendant, it is prejudicial error to fail to propound a question ... whether any juror would tend to give either more *or less* credence merely because of the occupation or category of the prospective witness." *Id.* at 349, 378 A.2d at 1344 (internal quotations and citations omitted) (emphasis in original). If the potential juror would be inclined to give greater weight to the testimony of a police officer, then the juror "has prejudged an issue of credibility in the case." *Id.* at 348, 378 A.2d at 1343. Whether a juror would be more inclined to give the prosecutor's argument more weight than defense counsel's does not involve judging the credibility of a witness as the factfinder in the case. Arguments of counsel are not evidence, and the court ordinarily instructs the jury to that effect. It was not prejudicial error to fail to propound this question.

Appellant contends that his proposed question no. 27 "is almost exactly like the question refused in *Sweet [v. State,* 371 Md. 1, 806 A.2d 265]," a sexual offense case in which we reversed the judgment because the trial court refused to ask: "Do the charges stir up strong emotional feelings in you that would affect your ability to be fair and impartial in this case?" *Id.* at 9, 806 A.2d at 270–71. Appellant's no. 27 in no way approximates the refused question in *Sweet.* Appellant's question is a compound question, one that is a vague inquiry as to an unstated burden of proof and a reference to the presumption of innocence, which can never be "higher or lower." In *Sweet,* we reasoned that because allegations of sexual abuse of a minor are capable of evoking strong feelings which, if uncovered, could constitute grounds for disqualification, when requested, the question should have been asked. *Id.* at 9–10, 806 A.2d at 271. Appellant's question no. 27 did not mirror the *Sweet* question, and on its face, was inappropriate. The trial court did not abuse its discretion in declining to ask it.

The record is replete with indications that the court fulfilled its duty to empanel an impartial jury. As examples, we note that after asking whether any members of the jury panel or

members of their immediate families had been witnesses to, victims of, or accused of a crime, the court excused jurors 19 and 35. Juror 19 was excused because he had served as a witness against his father in a case involving the sexual abuse of a young boy. Juror 35 was excused after indicating that he had a nephew that had been sexually assaulted and murdered. When the court asked if any potential jurors had religious, philosophical, or personal beliefs that would prevent their reaching a fair and impartial verdict, two other members of the venire panel answered in a manner that led to their exclusion. Juror 45 was excused for indicating that "the first thing that went through my mind when it said against a child was jack the jail up and put him under it." Juror 51 was excused after stating that as a "religious person ... I believe homosexuality is a sin. I don't think that I could judge this man fairly."

In the words of Chief Judge Bell, then writing for the panel of the Court of Special Appeals in *Shifflett v. State,* 80 Md.App. 151, 560 A.2d 587 (1989):

> "Viewed in the light of the questions actually propounded and the purpose of the voir dire examination, *i.e.,* to develop information from which it may be ascertained whether a prospective juror should be disqualified for cause, it is obvious that the trial court did not abuse its discretion when it refused to propound the questions proposed by appellant."

*Id.* at 156, 560 A.2d at 589. We hold that in declining to propound appellant's requested voir dire, the trial judge did not abuse his discretion.[6]

---

6. Although we conclude that the trial judge did not abuse his discretion in declining to ask the proposed voir dire questions, we think it sound practice, and one trial judges should follow, to ask prospective jurors, when asked to do so, whether the fact that the defendant is charged with a particular crime would affect their ability to be fair and impartial in the case or whether they have such strong feelings about the crime charged that they could not be fair and impartial and decide the case based solely on the evidence presented. In the case before us, defense counsel did not request such an instruction.

*JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*

BELL, C.J., dissents.

Dissenting Opinion by BELL, C.J.

This case highlights, in my opinion, a lack of consistency in this Court's rulings regarding voir dire questions that are designed to discover a potential juror's bias with respect to the crime for the commission of which the defendant has been charged and for which he or she is being tried. As proposed by the petitioners, the question presented is:

> "Did the trial court err in failing to inquire into and ferret out whether any potential jurors harbored any potential bias towards those charged with sexual acts or homosexual acts with minors?"

Although it acknowledges that the "better" practice is to ask the question, the majority holds that, by not asking such a question in this case, the trial court did not err.[1] It states that the questions proposed by the petitioner in this case were "speculative, inquisitorial, catechizing, 'fishing,' 'open-ended,' sentencing related, or law based questions," 399 Md. at 163, 923 A.2d at 54, and, thus, go beyond the type of questions designed to ferret out bias or assess impartiality. While the majority's rationale with regard to some of the questions proposed by the petitioner has merit, the fact remains that the trial court did not ask any questions that were designed to discover the bias a potential juror may have as to the particu-

---

1. In a footnote, it cautions:

 "[W]e think it sound practice, and one the trial judges should follow, to ask prospective jurors, when asked to do so, whether the fact that the defendant is charged with a particular crime would affect their ability to be fair and impartial in the case or whether they have such strong feelings about the crime charged that they could not be fair and impartial and decide the case based solely on the evidence presented."

 *Stewart v. State*, 399 Md. 146, 167 n. 6, 923 A.2d 44, 56 n. 6 (2007).

lar crime charged, in this case, the sexual abuse of minors. If asking such questions are "sound practice," one must ask: why is it not a required practice, especially given the precedents in this State?

In *State v. Thomas,* 369 Md. 202, 798 A.2d 566 (2002), defense counsel proposed to ask the venire panel, "Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts at a trial where narcotics violations have been alleged?" 369 Md. at 204, 798 A.2d at 567. The trial court refused to propound the question, concluding that it had been fairly covered by other voir dire questions, namely whether any members of the venire had formed an opinion or had information about the case and whether there was any other reason why any panel member felt he or she could not be impartial. 369 Md. at 205, 798 A.2d at 568. This Court did not agree. Opining:

> "A question aimed at uncovering a venire person's bias because of the nature of the crime with which the defendant is charged is directly relevant to, and focuses on, an issue particular to the defendant's case and, so, should be uncovered,"

369 Md. at 214, 798 A.2d at 573, we held that the defendant had the right to have a question propounded specifically aimed at uncovering a bias due to the nature of the crime with which he was charged, and, accordingly, that the trial court abused its discretion when it refused to ask the requested voir dire question. 369 Md. at 214, 798 A.2d at 573.

In *Sweet v. State,* 371 Md. 1, 806 A.2d 265 (2002), a case involving the sexual abuse of a minor, the defendant asked the trial court to inquire of the venire during voir dire: "Do the charges stir up strong emotional feelings in you that would affect your ability to be fair and impartial in this case?" The trial court refused. We held that *Thomas* was applicable and controlling, concluding that the proposed inquiry was directed at biases related to the charged criminal act, that, if uncovered, "would be disqualifying when they impaired the ability of

the juror to be fair and impartial." 371 Md. at 10, 806 A.2d at 271. Thus, we concluded, the trial court abused its discretion in failing to propound the requested voir dire question, and the defendant was entitled to a new trial. 371 Md. at 10, 806 A.2d at 271.

Despite this clear precedent, this Court, in *Curtin v. State*, 393 Md. 593, 619, 903 A.2d 922, 938 (2006), held that a trial court who refused to ask whether "anyone [has] any strong feelings concerning the use of handguns that they would be unable to render a fair and impartial verdict based on the evidence," did not abuse its discretion. In the case sub *judice*, the majority does likewise, even though it, like *Sweet*, involves sexual abuse of a minor.

Article 21 of the Maryland Declaration of Rights guarantees criminal defendants an impartial jury trial.[2] *Bristow v. State*, 242 Md. 283, 289, 219 A.2d 33, 36 (1966). The guarantee is not that the juror will not have formed or expressed an opinion with regard to the matter at issue, only "that he shall be without bias or prejudice for or against the accused, and that his mind is free to hear and impartially consider the evidence, and to render a verdict thereon without regard to any former opinion or impression existing in his mind, formed upon rumor or newspaper reports." *Garlitz v. State*, 71 Md. 293, 300, 18 A. 39, 41 (1889). *See Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751, 756 (1961); *Bristow*, 242 Md. at 288–289, 219 A.2d at 36; *Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 201, 167 A.2d 96, 98 (1961); *Newton v. State*, 147 Md. 71, 76, 127 A. 123, 126 (1924).

---

**2.** Article 21 of the Maryland Declaration of Rights provides

*"Rights of accused; indictment; counsel; confrontation; speedy trial; impartial and unanimous jury.*

"That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by *an impartial jury*, without whose unanimous consent he ought not to be found guilty." (Emphasis added).

Critical in ensuring Article 21's guarantee is the voir dire of the venire, to exclude potential jurors for whom there exists cause for disqualification. *Dingle v. State,* 361 Md. 1, 9, 759 A.2d 819, 823 (2000), *Boyd v. State,* 341 Md. 431, 435, 671 A.2d 33, 35 (1996), *Hill v. State,* 339 Md. 275, 279, 661 A.2d 1164, 1166 (1995). This Court has noted that "one of the ways to protect a defendant's constitutional right to an impartial jury is to expose the existence of factors which could cause a juror to be biased or prejudiced through the process of voir dire examination." *Jenkins v. State,* 375 Md. 284, 331, 825 A.2d 1008, 1035–1036 (2003). Thus, voir dire questions focus on the venire person's state of mind and, specifically, on whether there is some bias, prejudice, or preconception. *State v. Thomas,* 369 Md. 202, 210, 798 A.2d 566, 570 (2002).

Accordingly, a defendant is entitled to have the trial judge ask voir dire questions aimed at uncovering that prejudice, including any bias arising out of the nature of the crime with which the defendant is charged. *Thomas,* 369 Md. at 214, 798 A.2d at 573 (*citing Alexander v. R.D. Grier & Sons Co.,* 181 Md. 415, 419, 30 A.2d 757, 759 (1943)).

This case involves the sexual abuse of a minor by an adult, where the adult defendant was also a highly ranked and visible member of the church. The potential for bias, prejudice, or preconception in such a case is patent. As Judge Wilner stated in his concurrence in *Curtin:*

"It is obviously not reasonable to presume that [narcotics violations and sexual abuse of a minor] are the only kinds of crimes about which public emotion may run high. Surely, there are others. Having found that those kinds of criminal activity may so enrage prospective jurors as to require specific voir dire questions to ferret out possible bias, what standard will the Court use to distinguish one crime from another?

"We have essentially taken judicial notice that some people may have particularly strong feelings about narcotics crimes. Is it not equally likely that some will have the same strong feelings about other crimes-burglary, robbery, rape,

arson, not to mention murder. Some may be incensed over gambling or prostitution, or wanton, vicious assault, or cruelty to animals, or fraud. If the question is phrased as here-whether the prospective juror has such strong feelings about the crime as to make it difficult (or impossible) to weigh the facts fairly-what difference does it make what the crime is?"

*Curtin v. State,* 393 Md. at 614, 903 A.2d at 934–935 (Wilner, J., concurring).

I could not agree more. Why, given our previous rulings in *Thomas* and *Sweet,* are trial courts still allowed to avoid questions designed to uncover any bias a potential juror may have with respect to the specific crime charged? The trial court in this case did not ask anything which even remotely sought to uncover any such bias. The closest the trial court came was when it asked:

"Do any of you, ladies and gentleman, hold any religious, philosophical or personal beliefs that would prevent you from reaching a fair and impartial verdict based solely on the evidence presented in the court? If so, please stand."

"Finally, do any of you have any reason that I have not gone into why you believe you could not sit as a juror in this case and return a fair and impartial verdict based solely on the evidence presented here in court? If so, please stand."

Having asked these questions, the trial court felt its job was done:

"Everything that has been requested I would say has been fairly covered. We don't deal in possibilities which are things that begin with the word 'may,' or 'might,' or 'could.' I will not ask anymore."

But these questions are a far cry from what we required in *Thomas* and *Sweet.*

As stated earlier, voir dire questions focusing on the venire person's state of mind are designed specifically to determine whether that person has some bias, prejudice, or preconception. *Thomas,* 369 Md. at 210, 798 A.2d at 570. Thus, questions that target a specific attitude or bias about, with

respect to, or toward the specific charges on trial, should be required. While it may be desirable, and makes a better case, when such questions are requested explicitly in terms of whether the venire person has such strong feelings as to make it difficult, fairly and impartially, to weigh the facts at trial, the lack of such a request should not be disqualifying or dispositive. As I stated in my dissent in *Curtin*, "The trial courts, as a result of *Thomas* and *Sweet*, already know how to ask this question, and do not need further instruction." 393 Md. at 618, 903 A.2d at 937 (Bell, C.J., dissenting).

Because potential jurors may not outwardly admit or even recognize that they are biased, it is incumbent upon the trial court to ensure that an impartial jury is empaneled.

While I agree that the manner of conducting the voir dire and the scope of the inquiry in determining the eligibility of jurors is left to the sound discretion of the judge, *Curtin*, 393 Md. at 603, 903 A.2d at 928, certain topic areas require a heightened inquiry.

Interestingly, this case does not even the require, as Judge Wilner and I argued in *Curtin*, that requiring questions that target bias as to the specific crime charged should be expanded to include any crime-the crime alleged and charged in the case sub *judice* is *already* covered by *Sweet*. This ruling adds additional confusion to an already confusing and increasingly inconsistent line of cases.

I dissent.