983 A.2d 519

**Edwin WRIGHT**

v.

**STATE of Maryland.**

**No. 6, Sept. Term 2009.**

Court of Appeals of Maryland.

Nov. 16, 2009.

Brian M. Saccenti, Asst. Public Defender (Nancy S. Forster, Public Defender, of Baltimore, on brief), for petitioner.

Susannah E. Prucka, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland of Baltimore), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, J.

Petitioner Edwin Wright was charged with possession of cocaine, possession of cocaine with intent to distribute, and unlawful distribution of cocaine. Wright was tried before a jury in the Circuit Court for Baltimore City, found guilty on the first two charges, and sentenced to twenty-five years in prison. During jury selection, the trial court conducted voir dire by posing a roster of questions to the venire in quick succession, and then permitting jurors to respond only after all questions had been asked. Because this method of voir dire did not effectively ensure a fair and impartial jury, we vacate Wright's convictions, and remand the case for a new trial.

## FACTS AND LEGAL PROCEEDINGS

On May 6, 2006, Petitioner Edwin Wright was arrested and charged with possession of cocaine, possession of cocaine with intent to distribute, and unlawful distribution of cocaine. He was tried before the Circuit Court for Baltimore City on March 28–29, 2007. Before trial, the trial court conducted a voir dire of the fifty-person venire panel. During the voir dire, the venirepersons were asked, as a group, a roster of seventeen questions.

At the end of this collective questioning, each venireperson was called to the bench individually and asked if he or she had any information in response to the voir dire questions. The court then asked the venireperson if he or she could be fair and impartial. At the conclusion of this process, counsel for Wright and for the State moved the trial court to strike a

number of jurors for cause, based on the information uncovered during the trial court's questioning. Wright's counsel objected to this voir dire method, arguing that "the problem is [the jurors' abilities] to remember all the questions." The trial court overruled the objection, saying that in the court's understanding, the chosen method "complie[d] with ... reported cases." The trial court went on to say that "this is an extremely effective way of accomplishing what is sought to be accomplished in the voir dire process. The jurors do remember the questions."

Ultimately, Wright was convicted of possession of cocaine and possession of cocaine with intent to distribute, and sentenced to twenty-five years in prison without parole. Wright appealed on the grounds that the selected voir dire method prevented the empaneling of a fair and impartial jury.[1] In an unreported opinion, the Court of Special Appeals affirmed the judgment of the Circuit Court. While the Court of Special Appeals characterized the challenged voir dire method as "somewhat flawed," it concluded that the flaws were not so egregious as to constitute an abuse of discretion. We granted certiorari to consider whether the trial court properly exercised its discretion in relying on the chosen voir dire method.[2]

## DISCUSSION

There is only one issue in this case: did the trial court's voir dire method deprive Wright of a fair and impartial jury, as guaranteed to him by both the United States Constitution and the Maryland Declaration of Rights? *See* U.S. CONST. amend. VI; MD. DECL. OF RIGHTS art. 21. We evaluate voir dire methodology under an abuse of discretion standard. *See, e.g., Stewart v. State,* 399 Md. 146, 160, 923 A.2d 44, 52 (2007).

---

1. Wright also appealed the trial court's decision to restrict a defense witness's testimony after initially ruling the testimony admissible. That issue is not before this Court.

2. We have restated the question presented to illustrate better the problems presented by this case.

We begin from the premise that the "overarching purpose of voir dire in a criminal case is to ensure a fair and impartial jury." *Dingle v. State*, 361 Md. 1, 9, 759 A.2d 819, 823 (2000). Indeed, the only purpose of voir dire in Maryland is to illuminate to the trial court any cause for juror disqualification. *See Stewart*, 399 Md. at 158, 923 A.2d at 51. Without a comprehensive and effective voir dire, a trial judge cannot properly winnow the venire to only those jurors who will be able to perform their duties without prejudice. *See White v. State*, 374 Md. 232, 240, 821 A.2d 459, 463 (2003) ("Without adequate voir dire, the trial judge is unable to fulfill his or her responsibility to eliminate those prospective jurors who will be unable to perform their duty impartially.").

Within this overall framework, however, the trial court has "broad discretion in the conduct of voir dire...." *Dingle*, 361 Md. at 13, 759 A.2d at 826. That discretion extends to both the form and the substance of questions posed to the venire. *See, e.g., White*, 374 Md. at 242–44, 821 A.2d at 465 (holding that it was not an abuse of discretion for the trial court to pose "compound" voir dire questions to the venire as a whole, followed by extensive individual voir dire); *Stewart*, 399 Md. at 162, 923 A.2d at 53 (holding that the trial court was not required to ask voir dire questions on a subject merely because the questions were requested by a party). A trial court reaches the limits of its discretion only when the voir dire method employed by the court fails to probe juror biases effectively. *See, e.g., White*, 374 Md. at 241, 821 A.2d at 464 (holding that "the conclusions of the trial judge are entitled to less deference" if voir dire is "cursory, rushed, and unduly limited").

In this case, the selected method of voir dire strayed too close to the "cursory" and "unduly limited" techniques that we have proscribed. It is evident from the record that the trial court's questioning did not properly engage at least some members of the venire panel. For example, the following exchange occurred between the trial judge and Juror 567:

THE COURT: Do you have any information to give the Court in response to the questions that I've asked?

JUROR 567: No.

THE COURT: Is there any reason you would not be able to reach a fair and impartial verdict in this case—

JUROR 567: No.

THE COURT:—based on the evidence and the law as I instruct you?

\* \* \*

THE COURT: [ ] But the questions that I asked to the panel as a group, did you hear those questions?

JUROR 567: Yeah, I—some of 'em.

THE COURT: Okay.

The lack of proper comprehension in this exchange illustrates a systemic problem with the voir dire method used in this case. The presentation of a lengthy roster of questions to the venire, without providing the opportunity to answer each question as it was posed, required each venireperson to comprehend and retain far too much information to guarantee that the questions were answered properly.

In order to understand fully the difficulty associated with the retention of this information, it is worth examining both the full list of the questions posed and the manner in which they were presented to the venire. The trial court's statement to the venire ran as follows:

> THE COURT: As I said, the case before the Court this morning is the *State of Maryland v. Edwin Wright.* The Defendant, Edwin Wright, in this proceeding has been charged with possession with intent to distribute CDS and possession of CDS on May 6th, 2006 in the 1100 block of Preston Street in Baltimore City, State of Maryland.

> Does any member of the panel have any knowledge concerning this case either from hearing, seeing or reading about it in the mass media or from any other source whatsoever?

There are various individuals whose names may be mentioned during the course of this trial or who may be called as witnesses. Those persons are Detective Kenneth Ross, Detective Chris Faller, F-a-l-l-e-r, Detective Kyle Johnson, chemist Anthony Rumber, R-u-m-b-e-r, Chemist Angela Ellis and Terry Wilson. Does any member of the panel have any knowledge of the individuals whose names I have just mentioned?

Does any member of the panel know or have any relationship or knowledge of the Defendant, Mr. Edwin [Wright]?

\* \* \*

Does anyone know or have any relationship whatsoever, past or present, with Mr. Wright's counsel, Sharon A.H. May?

\* \* \*

Does anyone know or have any relationship, past or present, with the Assistant State's Attorney in this matter, Rita Wisthoff–Ito?

\* \* \*

This question is in three parts and it concerns both you and members of your immediate family. And by immediate family, I mean your parents, children, brothers, or sisters, spouse. I do not mean cousins, nephews, in-laws or other individuals unless they reside with you.

Has any member of the panel or any member of your immediate family ever been convicted—ever been the victim of a crime?

Has any member of the panel or any member of your immediate family ever been convicted of a crime?

Has any member of the panel or has any member of your immediate family ever been incarcerated in a jail or penal institution within the last five years?

Has any member of the panel or any member of your immediate family have any pending cases?

Has any member of the panel or any member of your immediate family had any other experience with the criminal justice system which would or might affect your ability to sit as a fair and impartial juror in this case?

Does any member of the panel have any religious, moral or other beliefs which would interfere with your ability to render a fair and impartial verdict in this case based on the evidence and the law as I instruct you?

The accused in this case is African–American. Does any member of the panel feel that he or she is unable to reach a fair and impartial verdict simply because the accused is African–American?

Does any member of the panel have such strong feelings concerning controlled dangerous substances, that is CDS, that you would be unable to render a fair and impartial verdict based on the evidence and the law as I instruct you?

Is there any member of the jury panel friendly with, associated with, or related to anyone in the Baltimore City Police Department, the State's Attorney's Office, the Maryland Division of Corrections, or any city or county correctional facility or agency, the Federal Bureau of Prisons or any other law enforcement agency?

There may be testimony in this case from one or more Baltimore City police officers. Would you give more weight or less weight to the testimony of a police officer versus a law witness merely because he or she is a police officer?

This trial is expected to last two days, that is, today and some period of time tomorrow. Is there any compelling reason why you would be unable to serve as a juror in this case for that reason, bearing in mind that the Court has very limited authority to excuse you for such a reason?

Is there any other reason whatsoever that you could not render a fair and impartial verdict in this case based on the evidence and the law as I instruct you?

The sheer bulk of the voir dire questions helps illustrate the difficulty of the task required of the venire. The form of the presentation further compounded that difficulty: the voir dire

comprised five and a half minutes of continuous questioning, without pause, after which each venireperson was called to the bench one at a time. This process resulted in substantial delay between presentation of the questions and the answers. Of the twelve jury members ultimately seated, four approached the bench more than thirty minutes after the voir dire questions had been read; the last of these approached more than fifty minutes after the reading.

While we have every confidence in our jurors' abilities to respond intelligently and effectively to inquiries posed during voir dire, we are also duty-bound to eliminate any doubt or error in the process, inasmuch as is possible. We have previously stated, in another context, that information presented in the courtroom is most accessible when divided into small, discrete segments. *See Abeokuto v. State,* 391 Md. 289, 350, 893 A.2d 1018, 1054 n. 23 (2006) (holding that it was best to "present [information on a defendant's rights during sentencing] ... in smaller intellectual 'bytes' and inquire discretely after each 'byte' ... whether a defendant understands [the information]."). That same principle governs this case.

To be sure, as the State emphasizes, voir dire procedures lie "within the sound discretion of the trial judge." *Bedford v. State,* 317 Md. 659, 670, 566 A.2d 111, 116–17 (1989). Paramount, however, is the trial court's obligation to exercise this discretion to "reasonably ... test the jury for bias, partiality, or prejudice." *Stewart,* 399 Md. at 160, 923 A.2d at 52. Our duty, moreover, is not fulfilled by rote deference to the trial court's decision based on the numerous cases in which we have held that a voir dire was properly within a trial court's discretion.

The State makes a logically flawed argument by asserting that the voir dire here must have served its purpose well because twenty-six members of the fifty-person panel were struck for cause. The proper inquiry is not how many jurors *were* struck, but how many jurors *should have been* struck. As we recognized in *Dingle,* it is irrelevant how many venirepersons are excused as a result of an improper voir dire—if

the parties are denied the opportunity to challenge "even one person[ ] who might have been subject to discharge because of the information generated, the many who were excused will matter not one whit." 361 Md. at 4, 759 A.2d at 821 n. 5 (holding as improper a voir dire requiring jurors to respond to a compound question only if both parts of an answer were affirmative).

The Court of Special Appeals distinguished *Dingle* by holding that, in this case, the trial court was "acutely aware of, and active in, the process of assessing juror bias and prejudice." While that may very well be true, the trial court's level of engagement in voir dire is a separate issue from the one presented here. The trial court is limited in its effectiveness by the juror information to which it has access. Here, the selected voir dire method may have obscured relevant information from the trial court's view by failing to ensure that the jurors on the venire made reasonably full disclosures. The trial court was therefore working with an incomplete understanding of the jury pool. Even the most diligent and inquisitive trial court could not effectively guarantee a fair and impartial jury with such limitations circumscribing its own knowledge.

 Nor do we find persuasive the State's assertion that Wright was not prejudiced by the failure to conduct a proper voir dire. An incomplete voir dire necessarily means an incomplete investigation into potential juror biases, which in turn leads to the very real possibility that the venire members failed to disclose relevant information. That potential failure forecloses further investigation into the venirepersons' states of mind, and makes proof of prejudice a virtual impossibility. *Cf. Williams v. State*, 394 Md. 98, 109–14, 904 A.2d 534, 540–43 (2006) (holding that a new trial was warranted where a juror did not properly disclose information during voir dire and there was no possibility of further investigating potential juror bias). Accepting the State's argument would require Wright to prove a negative-he would have to demonstrate that he was not prejudiced by a non-event (i.e., a failure to disclose

relevant information). We will not impose that insurmountable burden.

We are not suggesting that asking questions to a venire panel en masse is an inherently flawed procedure. In this case, it is the multiplicity of the questions that is problematic, not the means by which the questions are broadcast. The key to an effective voir dire is allowing venirepersons the meaningful opportunity to digest the individual questions posed to them and to respond fully to each one while the question is at the forefront of their minds.

For example, as is frequently done, the trial court may address a question to the venire as a whole, and then allow the panel members to respond to that individual question through a show of hands before moving on to the next one. The trial judge or the court clerk could make notes of which juror responded affirmatively to each question, and after all questions are completed, call those jurors who made an affirmative response to the bench for further inquiry. This process takes only moments longer than the procedure followed in this case. Alternately, a trial court could distribute a written list of questions to the venire prior to voir dire, and allow jurors the opportunity to note their answers as each question is asked. If this were done, jurors would have a reliable method of refreshing their memories about answers to the voir dire questions. These two methods, and no doubt several others, would ensure that voir dire serves its purpose without unduly impairing the laudable goal of judicial efficiency.

Voir dire is not a foolproof process, and we do not require perfection in its exercise. We do require a comprehensive, systematic inquiry that is reasonably calculated, in both form and substance, to elicit all relevant information from prospective jurors. The method under scrutiny here did not achieve that goal. Some, perhaps many, jurors may find that digesting, recalling, and answering seventeen consecutive voir dire questions is a manageable, even easy task. Perhaps this is true even when those jurors are not given external aid in recalling the questions, and are made to wait a significant

length of time before being called on to provide their answers. If we assume that these individuals are the norm, however, we run the risk of injecting yet another element of uncertainty into an already delicate process. All else being equal, it is better that we should use an overabundance of caution, and assume that the judicial system as a whole is better served by a more careful process. "Certainly, that is not too high a price to pay to give meaning to a right guaranteed by our Constitution." *Davis v. State*, 333 Md. 27, 69, 633 A.2d 867, 888 (1993) (Bell, J., dissenting).

We hold that, by employing the challenged method of voir dire, the trial court traveled beyond the limits of its discretion. Accordingly, we reverse the judgment of the Court of Special Appeals and remand to that Court, with directions to vacate Wright's convictions and remand for a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO VACATE PETITIONER'S CONVICTIONS AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY BALTIMORE CITY.**

Dissenting Opinion by MURPHY, J.

I agree that the "key to an effective voir dire is allowing venirepersons the meaningful opportunity to digest the individual questions posed to them and to respond fully to each one while the question is at the forefront of their minds[,]" and that the "proper inquiry is not how many jurors *were* struck, but how many jurors *should have been* struck." Every juror who served in the case at bar, however, answered "no" to the question of whether there was "any reason you would not be able to reach a fair and impartial verdict in this case based on the evidence and the law as I explain it?" In my opinion, it is unreasonable to hypothesize that any of those jurors gave an incorrect answer to that question because he or she forgot to

answer another question that would have revealed an inability to be fair and impartial. I therefore dissent from the holding that Petitioner is entitled to a new trial.

The record shows that Petitioner presented the Court of Special Appeals with two questions, the first of which asked:

Was it an abuse of discretion for the trial court to conduct *voir dire* by asking the venire panel, *en masse*, seventeen questions consecutively, and by obtaining answers to these questions from the venire individually, at the bench, in response to the court's question whether the potential juror had any information in response to any of the questions the court asked en masse?

The unanimous opinion affirming Petitioner's convictions was authored by Hon. Robert L. Karwacki (Retired, Specially Assigned), who—prior to serving on the Court of Special Appeals as well as on this Court—served on the Circuit Court for Baltimore City. The two judges who joined Judge Karwacki's opinion—Hon. Arrie W. Davis and Hon. Albert J. Matricciani, Jr.—also served on the Circuit Court for Baltimore City prior to serving on the Court of Special Appeals. Judge Karwacki's opinion includes the following analysis:

## THE *VOIR DIRE*

The trial court conducted a *voir dire* that consisted of two parts—during the first part the court asked the panel, *en masse*, seventeen questions successively. The second part consisted of the court asking each of the 50 panel members individually to approach the bench, when, in the presence of the State and defense counsel, the trial judge asked each venireperson "do you have any information to give the Court in response to the questions that I've asked?" We shall call this question the eighteenth question.

Appellant objected to this manner of conducting *voir dire* on the sole ground that the "problem is [the venire members] being able to remember all the questions" when called to the bench. The court responded to appellant's objection by stating that another trial court also used this method;

the court thought the method complied with case law; and that the court had employed this method numerous times and found it effective. At no time did appellant object to the substance of the court's eighteenth question.

In response to the potential juror's answer to the court's eighteenth question, the court asked another question, as follows, which we shall call the nineteenth question: "Is there any reason you would not be able to reach a fair and impartial verdict in this case based on the evidence and the law as I explain it?" If a potential juror responded to this question in the negative, the court asked another question, as follows, which we shall call the twentieth question: "Do you believe you could do that?" If the juror answered affirmatively to the 19th question, that there was a reason that the juror could not reach a fair and impartial verdict, the court asked for an explanation of the reason. Challenges to the panel were conducted at the end of the individual *voir dire* process.

In explaining to counsel why he asked follow up question number 20, "Do you believe you could do that?", the trial judge stated it is "because I—they're not here to make a determination whether they could be fair and impartial. But the body language and the way they deliver the answer to that question is really what I'm looking for in terms of whether they could be fair and impartial. So it's not the answer. It's the body language and the way they give it."

During challenges for cause, the record reveals that the court considered juror body language. The record also reveals that with some jurors the court did not ask question number 20 because the court got an impression of bias, or, as in the instance of a juror disclosing that she worked with appellant's mother, an "appearance of impropriety," so that in the court's view, it was unnecessary to inquire further.

Many potential jurors disclosed answers to the court's seventeen questions that revealed bias and the court fully explored the juror's feelings and obtained further informa-

tion about the source of the bias. For example, with respect to a question the court asked concerning what weight jurors would give to a law enforcement office's testimony, some jurors said they would give more weight to their testimony, while others said less. With respect to a question concerning jurors' experiences with the criminal justice system, a number of jurors provided their experiences and feelings, which revealed bias.

The court gave counsel an opportunity to obtain further clarification from potential jurors when they asked to do so. Viewed in its entirety, the *voir dire* record reveals that the court was probing and patient with the potential jurors.

\* \* \*

Appellant contends that both the method the trial court employed—asking the venire panel, *en masse,* seventeen questions serially and listening to their responses individually at the bench—and the first question the court asked each venireperson at the bench on individual *voir dire* (question number 18), are infirm, and prevented appellant from obtaining a fair and impartial jury.

Preliminarily, we note that appellant's trial counsel did not explicitly object to question number 18. However, the two-step *voir dire* method the court used included question number 18 and we think that it makes sense to examine the entire process to determine whether the court abused its discretion. Moreover, under Maryland Rule 4–323(c), appellant's objection to question number 18 was preserved because appellant's trial counsel made known to the court his objection to the court's entire manner of conducting *voir dire* . . . .

Appellant first argues that the court's procedure of asking seventeen questions serially and obtaining answers from the potential jurors individually afterward at the bench, did not provide reasonable assurance that prejudice would be uncovered if present.

The standard of review to evaluate a trial court's "exercise of discretion during *voir dire* is whether the questions posed and the procedures employed have created a reasonable assurance that prejudice would be discovered if present." *White v. State*, 374 Md. 232, 242[, 821 A.2d 459, 464] (2003).

A defendant's right to a fair and impartial jury is provided under both the Sixth Amendment of the U.S. Constitution, and Maryland's Declaration of Rights, Article 21. The *voir dire* process is the mechanism by which the right to an impartial jury is assured. In Maryland, the sole goal of *voir dire* questioning is to ferret out disqualifying bias and prejudice. *See, Dingle v. State*, 361 Md. 1, 9[, 759 A.2d 819, 823] (2000). Bias is revealed by exploration of only two areas of inquiry: whether a juror meets the minimum statutory qualifications for service and whether a prospective juror has a bias with respect to either the pertinent issues in a case or to any "collateral matter reasonable likely to unduly influence" the juror. *Id.* at 9–10[, 759 A.2d at 823–24].

The *voir dire* process, and the scope and form of *voir dire* questions are discretionary with the trial judge, *State v. Logan*, 394 Md. 378, 396 [906 A.2d 374, 385] (2006); *Dingle* at 13, [759 A.2d at 824] and will not be disturbed on appeal unless abused. *Logan*. Moreover, the trial court has "very wide discretion." *Id.*

Under Maryland Rule 4–312(d), the court may conduct *voir dire*. At its discretion, the court may also conduct individual *voir dire* out of the presence of other jurors, or *en masse*. *Davis v. State*, 93 Md.App. 89, 106–07[, 611 A.2d 1008, 1016–1017] (1992), *aff'd* 333 Md. 27 [633 A.2d 867] (1993). Typically, the trial judge asks the venire questions, entertaining additional questions from counsel at the court's discretion. *Id.*

To fulfill its duty to only empanel jurors who can fairly and impartially render a verdict, the trial judge must make a credibility determination that is the result of the judge's observation and evaluation of the juror's demeanor and

responses to questions. *White v. State,* 374 Md. 232, 241[, 821 A.2d 459, 464] (2003).

In Maryland, there are three overarching, intertwined principles to guide this Court in deciding whether the trial court abused its discretion in its conduct of *voir dire* in the instant case: 1) the trial court has "very wide discretion" in this area, *Logan,* 394 Md. 378, 396 [906 A.2d 374, 385], hence, the appellate court grants "great deference" to the trial judge, *White,* 374 Md. at 241[, 821 A.2d at 464]; 2) the juror *voir dire* process is prescribed "only as much *as is necessary* to establish that jurors meet the minimum qualifications for service and to uncover disqualifying bias," *Boyd v. State,* 341 Md. 431, 433[, 671 A.2d 33, 34] (1996) (emphasis in original); and, 3) the goal to empanel an impartial jury trumps the practice of limited *voir dire. Thomas v. State,* 139 Md.App. 188, 198[, 775 A.2d 406, 412] (2001) *aff'd* 369 Md. 202[, 798 A.2d at 566] (2002). Thus, our roadmap is clear.

Resolution of *voir dire* challenges are obtained by a case-by-case analysis. *Thomas,* 139 Md.App. at 197[, 775 A.2d at 412]. To evaluate whether the trial court fulfilled its duty to empanel a fair and impartial jury, we must examine the *voir dire* record in its entirety. *White,* 374 Md. at 243–44[, 821 A.2d at 465].

**In the case *sub judice,* the venire panel members had to remember their answers to only those questions of the seventeen that the court asked *en masse* that prompted a positive response. *(E.g.* that they had, or that a member of their family had, been convicted of a crime; that they or a member of their family had a pending case; that they felt that because the appellant was an African–American that they would be unable to reach a fair and impartial verdict). Called to the bench individually, the jurors had to report their answers, if any, to the court, at which time the court asked follow up questions (numbers 19 and 20).**

We do not think that this two-step *voir dire* method "distorts and frustrates" the purpose of *voir dire,* which is

to uncover disqualifying bias. *Compare Dingle v. State*, 361 Md. 1, 21[, 759 A.2d 819, 830] (2000) (noting that the purpose of *voir dire* was distorted and frustrated, rather than advanced, because the form of the challenged inquires posed by the *Dingle* trial court required jurors to self-assess bias).

Appellant next argues that the initial question that the court posed to the potential jurors individually, "do you have any information to give the Court in response to the questions that I've asked?" (question number 18), impermissibly shifted from the judge to the individual juror the responsibility to determine impartiality.

It is clear that the fact-finding responsibility to uncover bias during the *voir dire* process rests with the trial judge. *Thomas*, 369 Md. 202 [798 A.2d 566]. Thus, for example, in most instances, a compound question that requires a juror to respond only if the juror thought that he or she could not be impartial, impermissibly shifts to the juror the exercise of discretion that must rest with the trial judge. *Dingle*, 361 Md. at [21] [759 A.2d at 830]. *Compare White*, 374 Md. 232 [821 A.2d 459] (when prejudice is minimal, use of compound questions that permit a juror to only respond if the juror thought he or she could not be impartial, held not an abuse of discretion). A venire question that impermissibly shifts the bias fact-finding role from judge to juror also impermissibly prevents a party from exploring potential bias. *Dingle*, 361 Md. at [21] [759 A.2d at 830]. *Dingle* and *White* teach that, in general, when a *voir dire* question that permits the juror to self-assess impartiality is asked, the question will be carefully scrutinized in light of the entire *voir dire* process, to ensure that the trial judge remains the final arbiter of juror impartiality.

\* \* \*

Unlike the tainted questions in *Dingle*, the question the judge asked appellant's venire panel did not require the potential juror to determine whether he or she could be impartial. To be asked "do you have any information to

give the Court in response to the questions that I've asked?" leaves to juror discretion the decision to tell the truth whether the juror has "any information" to disclose in response to the contents of the seventeen questions the judge asked, not to whether the juror could be impartial. The discretion to tell the truth would have existed had the judge asked if the juror had a positive response to any of the seventeen questions. The trial judge's question did not shift to the jurors the judge's responsibility to determine bias.

**In the case *sub judice*, when a juror told the trial judge that he or she did not have any information to impart, the judge inquired whether there was "any reason you would not be able to reach a fair and impartial verdict in this case based on the evidence and the law as I instruct you?" (the 19th question). When the response was in the negative, the judge usually asked a follow up question: "Do you believe you can do that?" (the 20th question). If the answer to the 19th question was affirmative, the record reflects that the judge questioned the juror about the information the juror provided to determine if the juror was biased or prejudiced. Based on the juror's answers, the judge asked the 20th question. The record also reflects that a number of jurors were excused for cause.**

As Chief Judge Bell instructs, a challenged *voir dire* process should be examined to determine how the principles underlying the process are applied and to see what role the trial judge took in the selection process. *Dingle,* 361 Md. at 11 [, 759 A.2d at 824]. **In examining the record of the entire *voir dire* process in the instant case, we see a trial judge acutely aware of, and active in, the process of assessing juror bias and prejudice. While the method of asking the venire panel *en masse* seventeen questions consecutively without obtaining answers to each question is somewhat flawed, in that it may make it difficult for some jurors to recall the answers to the questions without copies of the questions before them, or paper**

and pencil to record their answers, the record reveals that the trial judge ensured that appellant was provided with a fair and impartial jury. We hold that the trial court did not err and abuse its discretion in its conducting a two-step method of *voir dire* and in asking on individual *voir dire* whether the juror had any information to impart in response to the court's initial questions asked *en masse.*

(Emphasis supplied; footnotes omitted). I agree with that opinion, as well as with the following suggestion included therein:

Although on the *voir dire* issue before us we find no abuse of discretion, we note that the method employed may prove difficult at times to some jurors in that they may have to remember answers to more than one question. Therefore, if this method is to be used, we urge that either pencils and paper or typed copies of the questions and pencils be given to the panel.

Although it certainly would be the better practice for a trial judge who asks questions to the venire as a whole to follow that suggestion and/or the examples discussed in the majority opinion, the question presented to this Court is whether the procedures employed in the case at bar "have created a reasonable assurance that prejudice would be discovered if present[?]" In my opinion, the answer to this question is "yes."