*Ruben Arnez Collins v. State*, No. 24, September Term, 2016

**CRIMINAL LAW — VOIR DIRE — PROCEDURE —** Maryland law grants broad discretion to trial judges in their conduct of voir dire. While informing the venire that sensitive questions may be answered at the bench rather than in open court is good practice, it is not an abuse of discretion for a judge to question the venire in open court without providing that instruction.

IN THE COURT OF APPEALS

OF MARYLAND

No. 24

September Term, 2016

_____

RUBEN ARNEZ COLLINS

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Barbera, C.J.

_____

Filed: April 21, 2017

"Voir dire," the French phrase meaning "to say the truth," describes the preliminary examination of prospective jurors to determine whether they are qualified and suitable to serve as jurors. The voir dire process is critical to ensuring that the courts honor the defendant's right to an impartial jury guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights.[1]

We decide in this case whether the voir dire process reasonably assured that Petitioner, Ruben Arnez Collins, was tried before an impartial jury. We conclude that the constitutional standard was satisfied and therefore affirm the judgment of conviction. We use this opportunity, though, to encourage trial judges to adopt certain best practices to help achieve the constitutionally-mandated goal of an impartial jury.

I

*The Background and Procedural History*

The issue before us does not require an extensive rendition of the factual and procedural underpinnings of this case. It is enough to note that Collins was tried before a jury in the Circuit Court for Wicomico County on charges related to the robbery of a convenience store in Delmar, Maryland. The evidence presented to the jury permitted it to find beyond a reasonable doubt that Collins entered the convenience store brandishing a box cutter, demanded money from the store clerk, and fled with over $100 in cash. The

---

[1] The Sixth Amendment to the Constitution, applicable to the States through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right to . . . trial, by an impartial jury." Article 21 of the Maryland Declaration of Rights provides: "That in all criminal prosecutions, every man hath a right to . . . trial by an impartial jury."

jury found Collins guilty of armed robbery, robbery, second degree assault, theft under $1000, and wear, carry, and transport of a weapon with intent to injure. The court sentenced Collins to twenty years imprisonment for armed robbery and merged the remaining offenses.

Collins noted an appeal to the Court of Special Appeals, arguing, among other claims, that the trial judge had abused his discretion in conducting the voir dire of the prospective jurors. The Court of Special Appeals rejected that argument and in an unreported opinion affirmed the judgment of conviction. We granted Collins's petition for writ of certiorari to review that holding of the Court of Special Appeals.

## II

### *The Voir Dire Process in the Present Case*

After the prospective jurors were sworn,[2] the trial judge began the voir dire process with the following: "All right, ladies and gentlemen [of the venire], I'm going to ask you a

---

[2] Maryland Rule 4-312(e)(1) addresses the requirement that the prospective jurors' responses to questions posed during voir dire "be under oath." That rule provides:
> (1) Examination. The trial judge may permit the parties to conduct an examination of qualified jurors or may conduct the examination after considering questions proposed by the parties. If the judge conducts the examination, the judge may permit the parties to supplement the examination by further inquiry or may submit to the jurors additional questions proposed by the parties. The jurors' responses to any examination shall be under oath. On request of any party, the judge shall direct the clerk to call the roll of the array and to request each qualified juror to stand and be identified when called.

The Maryland Rules do not prescribe a particular oath. One example can be found in *Montgomery v. State*, 206 Md. App. 357, 368 (2012). The oath given in that Baltimore City case, delivered by the courtroom clerk, reads: "Do you and each of you solemnly promise and declare that you shall true answers make to such questions, as the Court shall demand of you? If so please answer I do."

series of questions; I'll ask them to you as a group. If your answer to any question is yes, please stand up so I may ask you some additional questions." The judge then described the nature of the case to the venire, listing the charges and the name and location of the convenience store where the robbery occurred. The judge did not indicate whether follow-up questions would be asked in open court or at the bench, and did not inform venire members that they could request to answer follow-up questions in relative privacy at the bench.

No member of the venire responded affirmatively to Questions One through Five. Those questions addressed prior knowledge of the case, predetermined views on guilt, relationship to Collins, relationship to the attorneys, and previous involvement "in the criminal justice system either as the victim of, a witness to or a person accused of a crime such as that with which the Defendant is charged."

Question Six asked whether any member of the venire or his or her immediate family was employed currently or in the past by a law enforcement agency or a prosecutor's office. That question elicited eleven affirmative responses from the venire. The judge advised those who responded in the affirmative that he would be asking follow-up questions of each of them, individually. At that point, defense counsel asked, "Your Honor, we're not going to the bench?" The court replied, "No." Twice thereafter, as the judge questioned other venirepersons who had answered Question Six in the affirmative, defense counsel asked the judge "that we be permitted to have these answers at the bench." The judge denied both requests.

The first venireperson to be questioned in open court was Juror 582. The judge

3

asked whether he or a family member was employed by law enforcement. Juror 582 replied that he had been employed with the New York City Police Department from 1984 to 2004. The judge then asked: "Would that affect in any way your ability to fairly and impartially decide a criminal case such as this?" Juror 582 answered "no," and the judge directed him to take his seat. The judge questioned in the same way the ten other venirepersons who had indicated an affirmative answer to Question Six, asking in some instances for additional detail. Save for Juror 538, each of the others who had responded affirmatively to Question Six advised the judge that, notwithstanding the connection with law enforcement, he or she could fairly and impartially decide the case. The judge brought Juror 538 to the bench for further questioning, asked follow up questions, and, in light of his responses, informed him that he was struck for cause and, once the jury had been picked, he would be dismissed. Juror 538 was dismissed at the conclusion of jury selection.

As voir dire progressed, the judge asked additional questions of the full venire, including whether any of the prospective jurors would be more or less inclined to believe a person was guilty because of his race; whether any of them had such strong feelings about the charges in the case that they could not fairly weigh the evidence; whether any of them had religious, moral, or other reasons that would prevent them from deciding the guilt or innocence of another human being; whether any of them knew the possible witnesses in the case; and a final catch-all question asking whether there was any other reason they could not serve.

The judge received affirmative responses to two of these questions: whether venire members had religious, moral, or other reasons they could not judge another person; and

4

whether members knew any of the possible witnesses. The judge had those prospective jurors approach the bench for follow-up questions. Thus, only those prospective jurors who responded affirmatively to Question Six, concerning connections with law enforcement or prosecution agencies, were asked follow-up questions in open court.

III

*Discussion*

*A. The Parties' Arguments*

Collins argues that the trial judge abused his discretion in his handling of the voir dire process and thereby violated Collins's right to a fair and impartial jury. He claims that the violation stemmed from the judge's decision not to invite all venirepersons who provided affirmative responses to approach the bench for follow-up questions, and the judge's failure to inform the venirepersons that they could request to answer at the bench. Collins argues that this procedure discouraged the venirepersons from completely and honestly answering the questions asked of them. He claims that, because many of the questions asked during voir dire could be embarrassing to venirepersons, the trial court's method does not provide the "reasonable assurance that prejudice would be discovered if present," as our jurisprudence requires in order to satisfy the constitutional guarantee of an impartial jury. *See, e.g., White v. State*, 374 Md. 232, 242 (2003).

The State argues in response that the trial judge acted within the bounds of his discretion in conducting voir dire, which is the standard by which the appellate courts assess the propriety of the trial court's chosen process. In support of that argument, the State notes the following: the judge posed "single-topic questions" that were read one at a

5

time; he engaged in individual voir dire of the prospective jurors who indicated an affirmative response by asking them single questions; and he brought to the bench jurors who gave an "affirmative response to any remotely 'sensitive' topics." The State further argues that the standard we have set for review of the conduct of voir dire "is not that there be no possibility of undiscovered prejudice." Rather, as Collins recognizes, "the standard is that the procedures created a 'reasonable assurance' that prejudice will be discovered."

*B. The Law*

We have described the voir dire process as "critical" to assuring that the federal and state constitutional "guarantees of a fair and impartial trial [are] honored." *Stewart v. State*, 399 Md. 146, 158 (2007). "Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981).

Voir dire is a flexible process in this state, not bound by statutory prescriptions, *see Davis v. State*, 333 Md. 27, 34 (1993), but instead built over time through our case law.[3] We have made plain that, in this state, "the sole purpose of voir dire is to ensure a fair and impartial jury by determining the existence of cause for disqualification, and not as in many other states, to include the intelligent exercise of peremptory challenges." *Stewart*, 399

---

[3] While the Courts and Judicial Proceedings Article contains some guidance on matters such as the authority of the trial judge to excuse for cause or upon exercise of a party's peremptory challenge, the process and substance of voir dire in Maryland has been developed through the common law. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 8-404, 8-420 (2013, 2013 Repl. Vol., 2016 Supp.).

Md. at 158; *see also Pearson v. State*, 437 Md. 350, 356-57 (2014); *Dingle v. State*, 361 Md. 1, 13-14 (2000); *Davis*, 333 Md. at 35-36 (stating that voir dire covers "two areas of inquiry that may uncover cause for disqualification: (1) an examination to determine whether prospective jurors meet the minimum statutory qualifications for jury service; or (2) an examination of a juror conducted strictly within the right to discover the state of mind of the juror in respect to the matter in hand or any collateral matter *reasonably liable* to unduly influence him" (internal quotation marks, ellipses, and citation omitted)).

We grant to the trial court significant latitude in the process of conducting voir dire and the scope and form of questions presented to the venire. "[N]o formula or precise technical test exists for determining whether a prospective juror is impartial." *White*, 374 Md. at 241. And we have said repeatedly that the trial judge is vested with broad discretion in the conduct of *voir dire*, subject to reversal for an abuse of discretion. *Pearson*, 437 Md. at 356; *see also Burch v. State,* 346 Md. 253, 293 (1997); *Perry v. State,* 344 Md. 204, 218 (1996); *Hill v. State,* 339 Md. 275, 279 (1995). Yet, "[u]ndergirding the voir dire procedure and, hence, informing the trial court's exercise of discretion regarding the conduct of the voir dire, is a single, primary, and overriding principle or purpose: to ascertain the existence of cause for disqualification." *Dingle*, 361 Md. at 10 (citation and internal quotation marks omitted). "[W]e do not require perfection in its exercise." *Wright v. State*, 411 Md. 503, 514 (2009). The "trial court reaches the limits of its discretion only when the voir dire method employed by the court fails to probe juror biases effectively." *Id*. at 508.

7

We have made equally clear that voir dire should not be "cursory, rushed, and unduly limited," *White*, 374 Md. at 241, but instead should be "a comprehensive, systematic inquiry that is reasonably calculated, in both form and substance, to elicit all relevant information from prospective jurors." *Wright*, 411 Md. at 514. The broad discretion that we accord judges in the conduct of voir dire "and the rigidity of the limited voir dire process are tempered by the importance and preeminence of the right to a fair and impartial jury and the need to ensure that one is empaneled." *Dingle*, 361 Md. at 14. We therefore would not fulfill our duty as a reviewing court if we were to grant "rote deference to the trial court's decision based on the numerous cases in which we have held that a voir dire was properly within a trial court's discretion." *Wright*, 411 Md. at 512. In the end, "[t]he standard for evaluating a court's exercise of discretion during the *voir dire* is whether the questions posed and the procedures employed have created a reasonable assurance that prejudice would be discovered if present." *White,* 374 Md. at 242.

Regardless of the leeway we grant trial courts in the process of conducting voir dire, we require that certain substantive elements be incorporated. If relevant to the case and requested by one of the parties, we have held that it is reversible error for a trial court not to question the venire regarding racial, ethnic, cultural or religious bias; whether more or less credence would be given to a police officer simply because of that officer's position; and whether the venire harbors an unwillingness to convict a defendant of a capital crime. *See Hernandez v. State*, 357 Md. 204, 232 (1999) (holding trial judge erred by failing to inquire into prospective jurors' possible racial or ethnic bias after being requested to do so by defendant); *Hill*, 339 Md. at 285 (same); *Bowie v. State*, 324 Md. 1, 15 (1991) (same);

8

*Casey v. Roman Catholic Archbishop of Balt.*, 217 Md. 595, 606-07 (1958) (holding that the trial judge erred by failing to inquire into prospective jurors' possible religious bias); *Langley v. State*, 281 Md. 337, 348-49 (1977) (holding that trial courts must inquire into undue weight given to police officer testimony).[4] Yet, even for these mandatory subjects of inquiry, generally, "neither a specific form of question nor procedure is required." *Bowie*, 324 Md. at 13.

That said, trial judges are not given carte blanche in determining how to pose questions, and in several instances, we have identified reversible error. We held in *Wright* that the trial court committed reversible error by posing seventeen voir dire questions in quick succession, and then requiring the venirepersons to answer all seventeen questions at once, "result[ing] in substantial delay between presentation of the questions and the answers." *See* 411 Md. at 512-13. In *Dingle*, we held that the trial judge committed reversible error in posing compound questions, the second part of which instructed the juror to decide whether he or she could be fair and impartial. 361 Md. at 21. By allowing the prospective jurors to decide their ability to be fair, the process supplanted a key role of the trial judge. *Id.* In *Pearson*, we held that the trial judge committed reversible error in phrasing a "strong feelings" question such that each juror was required to evaluate his or her own potential bias. 437 Md. at 361-62.

---

[4] Before the abolition of the death penalty in Maryland, in 2013, we had long required that in a capital case the State has the right to challenge a prospective juror for cause based upon that juror's conscientious scruples against capital punishment or unwillingness to convict based on circumstantial evidence in a capital case. *See Corens v. State*, 185 Md. 561, 564 (1946).

*C. The Present Case*

Collins relies upon *Wright*, *Dingle*, and *Pearson* to support his contention that the voir dire procedure employed in the case at bar resulted in reversible error, as in each of those cases. We disagree. Unlike in *Dingle*, the trial judge in this case did not compound his questions,[5] neither did the method employed by the trial judge improperly abdicate the judge's role to the venire members as in *Dingle*. Nor is this case like *Wright*. Unlike in that case, the trial judge's method, here, did not impose upon the prospective jurors a challenge to memory and understanding that most, if not all, people cannot reasonably be expected to meet.

In those cases where we have reversed based on an error in voir dire, the failure to investigate critical substantive matters or the procedure employed by the trial judge in some way directly prevented the judge from receiving information necessary to assess impartiality. In *Hernandez*, the trial judge failed to ask the venire about a critical subject area—the venire members' potential bias related to the defendant's race. 357 Md. at 225. In *Dingle*, the court asked compound questions, the structure of which likely concealed some positive responses. 361 Md. at 21. In *Wright*, the court bundled every question into one lengthy discourse and asked follow-up questions of the venire members after an

---

[5] We note that, as we have recognized in the past, a voir dire process that involves compound questions is not automatically invalid. "A review of the trial court's rulings should be undertaken only on the record of the *voir dire* examination as a whole." *White*, 374 Md. at 243. In *White*, the trial judge initially asked the venire compound questions, but she followed that with an exhaustive, two-day long, individual voir dire process, which this Court found to be procedurally sufficient. *Id.* at 248.

extended delay, without the benefit of printed material to refresh their memories. 411 Md. at 512-13. The problems identified in the cases above are not present here.

Collins argues that the potential embarrassment that venire members may anticipate from answering questions in open court is, on its own, such a serious procedural problem that questions in open court should constitute an abuse of discretion. He contends that the mere presence of the other venire members should be considered sufficient to prevent necessary information from reaching the judge—that potential embarrassment is so powerful a force that it should be reversible error to question a venire as a group. But Collins's argument asks for a much higher bar than we have set through our prior cases on this matter, based in a deferential standard of review that seeks only "*reasonable* assurance that prejudice would be discovered if present," *White*, 374 Md. at 242 (emphasis added), and grants broad latitude to the trial judge in the scope and form of questioning.[6]

Collins points out that the trial judge did not assure the venire that, should they have an embarrassing response to any question, they might discuss the response in relative privacy with the judge, in the presence of counsel and Collins, rather than in open court. But, neither did the judge tell the venire that he would engage in public discussion of their

---

[6] The standard we have set for a trial judge's performance of voir dire also has roots in matters of judicial economy, acknowledging that the judge is charged with efficiently conducting voir dire while pressed with an active docket of pending cases. Judges in this State make various decisions based in judicial economy, recognizing that "[i]n a world of finite resources, if the fabled 'day in court' is permitted casually to multiply into twenty days in court, the inevitable consequence is that, by the inexorable law of mathematics, nineteen other litigants are denied any time in court at all." *Davis*, 333 Md. at 42 (quoting *Davis v. State*, 93 Md. App. 89, 94 (1992)).

11

responses—he said merely that, "[i]f your answer to any question is yes, please stand up so I may ask you some additional questions."

We agree with Collins that a better method is to inform the jury that follow-up will occur at the bench. Yet, use of a different process, such as the one in the present case, is not automatic grounds for reversal. Maryland law does not require the trial judge to question the venire at the bench. Instead, "[i]n Maryland, unlike some of our sister jurisdictions, the trial judge may, at his or her discretion, conduct individual voir dire out of the presence of other jurors but is not required to do so." *White*, 374 Md. at 241. In addition, the trial judge here asked follow-up questions in open court in regards to only one question—the non-sensitive inquiry into whether any member of the venire was employed or had close relatives employed in law enforcement. For all other questions that elicited affirmative initial responses, including the more sensitive religious and moral concern question, the judge conducted follow-up inquiry at the bench.[7]

---

[7] Collins has endeavored to establish that the trial judge's process was flawed because of the contrast between the complete lack of response in this case to the question regarding involvement in the criminal justice system, and the multitude of responses recorded in other criminal cases in the same county and same year. Collins, through counsel, performed an extensive review, examining the procedure and responses in twenty-nine criminal cases tried in Wicomico County in 2014. He found that, in every case except this one, the trial judge invited venire members to the bench for questioning, and that in every other case examined, affirmative responses were recorded regarding involvement in the criminal justice system.

Collins's thorough research of these practices is laudable, but that other judges employ a different approach to voir dire in a criminal case does not alter our decision on whether the process here violated the legal standard. We also note that the trial judge in this case phrased his question as follows: "Have you or has any member of your immediate family ever been involved in the criminal justice system either as the victim of, a witness to or a person accused of a crime *such as that with which the Defendant is charged?*" (emphasis added). It would not be particularly surprising if no member of the venire or

We review a judge's conduct of voir dire for abuse of discretion and, when a judge's approach provides reasonable assurance that prejudice will be discovered, the judge has acted within his or her discretion. *Id.* at 242. Here, the trial judge asked the questions required by our jurisprudence and in an acceptable form. This Court has never held that failing to inform jurors they may respond in private is an abuse of discretion, and we decline to do so now.

IV

*A Note on Best Practices*

We sympathize with the position of any trial judge conducting voir dire—the circuit court judges of this state often have a potentially lengthy trial ahead and many other cases queued behind, let alone the immediate issue of the multi-part jury selection process. We understand, too, the urge to adopt a methodology for conducting voir dire in a manner that expends the least amount of time to select a jury, while remaining compliant with the dictates of our jurisprudence on the subject. We therefore take this opportunity to comment on a best practice for conducting voir dire to provide guidance to judges seeking an efficient, yet thorough jury selection process that seeks to uncover cause for disqualification.

---

their family had been previously involved in an armed robbery. This question may have elicited responses if the trial judge had dropped the emphasized clause; it is also possible that some or even all responses Collins's counsel identified in other Wicomico County cases may have been in response to such a broader question. Still, that such is possible does not dictate a modification of our current standard of review for abuse of discretion, nor does it alter the outcome in the present case.

13

As Collins has argued, we have expressed concern regarding questions posed to the venire in open court. In *Davis*, we acknowledged that:

> [E]ven where the scope of the proposed *voir dire* questioning is otherwise permissible but potentially embarrassing or humiliating, the trial judge should exercise discretion in structuring the questions in a manner which would avoid unnecessarily embarrassing the venire panel. Such questions should be worded in a way that potentially embarrassing responses should be given at the bench, rather than before open court.

333 Md. at 36 n.1. We also have recognized that "there may be, and often is, a conflict between keeping the voir dire process limited and the goal of ferreting out cause for disqualification." *Dingle*, 361 Md. at 14.

Research has produced concerning findings regarding the voir dire process. Those findings support the adoption of procedures that encourage disclosure to the greatest extent practicable.[8] We appreciate that the voir dire process does not require a "one size fits all"

---

[8] In one study, researchers observed voir dire in thirty-one criminal cases in the trial courts of the District of Columbia, then conducted post-trial interviews of 190 of the prospective jurors that had been empaneled, and compared their voir dire answers to their post-trial answers. Richard Seltzer et al., *Juror Honesty During the Voir Dire*, 19 J. CRIM. JUST. 451 (1991). The researchers found that nearly twenty-five percent of jurors who admitted post-trial that they or members of their family had been victims of crime did not come forward when questioned during voir dire. *Id.* at 455. The researchers also found that nearly thirty percent of the jurors interviewed should have, but did not, come forward in response to questions regarding their employment or friends and family's employment in law enforcement. *Id.* at 456. Many other troubling studies of potential bias and nondisclosure, intentional or subconscious, have been recorded in the academic literature. *See, e.g.*, Dale W. Broeder, *Voir Dire Examinations: An Empirical Study,* 38 S. CAL. L. REV. 503 (1965) (conducting post-trial interviews of 225 jurors and finding numerous instances of nondisclosure); Neal Bush, *The Case for Expansive* Voir Dire, 2 L. & PSYCHOL. REV. 9, 13-14 (1976); Patricia G. Devine, *Stereotypes and Prejudice: Their Automatic and Controlled Components,* 56 J. PERSONALITY & SOC. PSYCHOL. 5 (1989) (explaining the concept of implicit bias—those biases, sometimes including racial biases, that jurors hold without conscious awareness and control of its impacts on their perception and judgment).

in all cases throughout Maryland. Nevertheless, attention should be paid to how best, in every case, to reasonably ensure the federal and state constitutional guarantee of an impartial jury. "While we have every confidence in our jurors' abilities to respond intelligently and effectively to inquiries posed during voir dire, we are also duty-bound to eliminate any doubt or error in the process, inasmuch as is possible." *Wright*, 411 Md. at 512.

Guidance on how best to achieve that goal has been further developed by the Maryland State Bar Association's Special Committee on Voir Dire. The Committee's Model Jury Selection Questions for Criminal Trials provides a flexible script with committee notes as a tool for judges in the voir dire process. *See* MARYLAND STATE BAR ASS'N, MODEL JURY SELECTION QUESTIONS FOR CRIMINAL TRIALS, http://www.msba.org/committees/voirdire/default.aspx (last visited on April 17, 2017). We recommend the procedure outlined in the following committee note:

> Before proceeding, judges should advise counsel whether the judge will ask all general questions before asking any follow-up questions. If the judge will take follow-up responses during the general questioning, the judge should also advise counsel whether they may ask follow-up questions directly to prospective jurors or must request that the judge ask specific follow-up questions.
> Judges (and counsel) must conduct all juror questioning on the record—both general questions of the full jury panel and follow-up questions of individual prospective jurors. Follow up questioning of a prospective juror should usually be conducted out of the hearing of the full panel.
> To improve the efficiency of juror questioning and to accommodate persons who may have difficulty walking or standing, judges may choose to ask all general questions first, noting affirmative responses for follow-up questions after the general question period. Judges may conduct individual questioning at the bench or in a conference room where the record and security will be maintained.

The Committee's document also offers useful model language explaining to the prospective jurors why the voir dire process is important to securing a fair and impartial jury, and outlining how the process will proceed, including that the members of the venire will be sworn—that they will be asked to declare under the penalty of perjury to answer truthfully all questions asked of them. The model provides as well that, if the answer is "yes" or "maybe" the prospective juror should stand until the judge calls upon him or her, and when called upon, to give only the juror's number.[9]

The proposed practice further suggests that the trial judge should choose one of the following alternatives for handling follow-up questions, and inform the jurors that follow-up questions may be asked at the bench:

> *Alternative 1: If the judge will ask all general questions before individual follow-up responses, continue:*
>
> After I finish asking all general questions, I will ask you to come to the bench *[conference room]* to explain your response out of the hearing of your fellow prospective jurors.
>
> *Alternative 2: If the judge will ask follow-up questions immediately after initial responses, continue:*
>
> After you tell me your number, I may ask you to explain or discuss your response. If you do not wish to answer in open court, please let me know. I may ask you to come to the bench at that time, or at a later time.

No one can deny that open court is a formal, public place, staffed with authority figures. Persons called for jury service are among strangers and—except for the rare

---

[9] We agree with the recommendation that the court ask jurors to indicate an affirmative response to a question, even if the answer is "maybe", as it is more likely to resolve the potential for confusion or uncertainty among the prospective jurors.

16

individual who is familiar with a courtroom setting and the trial process—may be confused by the process or substance of voir dire, much less its importance to the constitutional guarantee of a trial by an impartial jury. The setting alone is likely to intimidate many venirepersons. It is also likely that many prospective jurors have little or no experience speaking in public, much less in answer to a judge's questions, in the formality of a courtroom, and in the presence of a crowd. Finally, it goes almost without saying that the more intimidating the process, the greater the chance that a prospective juror will simply refuse to answer or shy from responding with complete candor.

Of the two alternatives proposed by the Committee, we prefer the former because it suggests an approach that provides all venirepersons the greatest degree of privacy while decreasing anxiety and encouraging full disclosure of information relevant to cause for disqualification. Alternative 1 calls for public disclosure, through non-verbal assent only, by those prospective jurors who believe the answer to any given question is "yes" or "maybe", followed at the appropriate time by subsequent communication with the judge or lawyers at the bench. This alternative avoids both the requirement that the responding juror speak in public as well as the possibility that the juror, wittingly or otherwise, communicates to other venirepersons information that could adversely affect their qualification to serve on the jury. Alternative 1 also eliminates any anxiety that might attend a prospective juror's having to request to respond at the bench, as is contemplated by Alternative 2.

We appreciate the good work of the Committee and commend to bench and bar alike a review of the model questions in their entirety.[10]  The thoughtful commentary and recommendations in the report should make it as easy as practicable for venire members to disclose information fully and with candor.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

---

[10]  In that vein, we also agree with the Committee's suggestion that, early in the judge's introductory comments, the judge include the following:  "If you have a mobile phone or device with you, you must turn it off now, and you may not turn it on again until I give you permission to do so."  This direction not only reduces distraction, but helps prevent prospective jurors from obtaining information about the case they may be asked to decide.